EMILY HEMMENS, formerly EMILY HALSTEAD, Appellant, *v.*
EDWARD B. NELSON, Respondent.

Where in an action for slander the defamatory statement or charge is
shown to have been privileged, and so the burden of showing actual
malice is cast upon plaintiff, simply showing that the charge was false
is not sufficient to authorize the submission of the question to the jury.

Where there is no evidence upon an issue, or the weight of evidence is so
decidedly preponderating in favor of one side that a verdict contrary to
it would be set aside, it is the duty of the trial judge to nonsuit or direct
a verdict, as the case may require.

While the Code of Civil Procedure (§ 1906) makes words imputing
unchastity to a female actionable without proof of special damages, it
has not dispensed with the necessity of innuendoes pointing to an injur-
ious intent or meaning, when the words used do not necessarily and as
matter of law charge unchastity.

Where the complaint in an action for slander charges the use of words by
defendant, which may or may not be harmless according to the intent and
the sense in which they were used, an innuendo or allegation is necessary
to the effect that they were used in a sense to render them actionable.

In an action for slander the following facts appeared : Defendant was prin-
cipal of an institution for deaf-mutes, one of the charitable institutions
of the state, and was the executive head and manager thereof. The gen-
eral management of the institution is committed by statute to a board of
trustees with power to enact by-laws, etc. It was, under the rules, the
duty and right of defendant to attend meetings of the board, make
reports in writing and take part in discussions. He was required to
employ and dismiss all employees, except officers of the institution or
persons appointed by the board, and, with the approval of the executive
committee, had power to suspend any officer or teacher appointed by
the board, and he was to keep a book in which was entered all things
worthy of note relating to the institution; this was the property of the
trustees and was submitted to them at quarterly meetings. Plaintiff
was superintendent of the sewing department, her duty being to superin-
tend the making of clothing and to instruct a class in sewing. Defend-
ant's wife received, by mail, an envelope inclosing a printed letter or
circular containing obscene and indecent matter; upon it were words
written in pencil. The wife opened the envelope, and on discovering
the nature of the inclosure handed it to her husband; he examined the
writing on the paper and the directions on the envelope and compared
them with writings of plaintiff and others in his office and formed the
opinion that plaintiff sent it. Defendant thereupon took the letter and
papers to B., the chairman of the board and of the executive committee,
and expressed to him the opinion that plaintiff sent the letter. B., after

examination of the letter and comparison with plaintiff's letters and sig-
natures, agreed with defendant. At his suggestion the papers were sent
to an expert in New York, who returned them with his opinion that the
address on the envelope and the pencil writing were written by plaintiff.
A meeting of the executive committee was called at which the parties
were present, at which defendant charged in substance that plaintiff
sent the letter, and she was on that day discharged by the committee.
*Held*, that the charge was defamatory and *prima facie* actionable, but
that if defendant believed that plaintiff sent the letter it was his duty to
communicate it to the committee and the president as he did; that his
statements, in the absence of proof of actual malice, were confidential
and privileged, and a direction for a verdict in favor of defendant was
proper; that the question was not whether the charge was true or false, or
whether defendant had sufficient cause to believe that plaintiff sent the
letter, or acted hastily or in mistake, but whether there was evidence
that he knew or believed the charge to be false.

It appeared that before the receipt of the letter defendant had criticised
plaintiff's conduct and said something about discharging her. *Held*,
that it was defendant's duty to freely criticise and even reprove plain-
tiff or any other teacher whenever in his judgment it was necessary,
and the exercise of this right was not evidence of malice.

The complaint set forth as a separate cause of action, that subsequent to
the transactions above referred to, defendant stated, in the presence of
another, of and concerning plaintiff "that she entertained gentlemen
company at all hours of the night." There was no averment in the
complaint that defendant intended to charge plaintiff with unchastity.
On the trial plaintiff's counsel offered to prove the speaking of these
words, not to prove malice in making the other charge, but to establish
the separate cause of action. The court held them inadmissible for this
purpose as they did not necessarily impute unchastity. *Held*, no error.

(Argued April 12, 1893; decided June 13, 1893.)

Appeal from judgment of the General Term of the Supreme
Court in the fourth judicial department, entered upon an order
made February 25, 1891, which affirmed a judgment in favor of
defendant entered upon a verdict directed by the court and
affirmed an order denying a motion for a new trial.

*Oswald B. Backus* for appellant. Evidence as to making
the charge of unchastity was improperly excluded. (Code Civ.
Pro. § 1906; *Pike* v. *Van Wormer*, 6 How. Pr. 101; *Carroll*
v. *White*, 33 Barb. 615; *Cooper* v. *Smith*, Cro. Jac. 423;
*Button* v. *Hayward*, 8 Mod. 24; *Hays* v. *Hays*, 1 Humph.

502; *Taylor* v. *Caly*, Minor, 258; *Ecart* v. *Wilson*, 10 S. &
R. 44; *Maybee* v. *Fisk*, 42 Barb. 330.) Plaintiff excepted to
the decision of the court ordering a verdict in favor of the
defendant, and asked to go to the jury upon the question of
whether the defendant had probable cause for making the
accusation he did, and upon the whole case, which was refused.
This was error. (*Halstead* v. *Nelson*, 36 Hun, 156; *Heyne*
v. *Blair*, 62 N. Y. 19; *Masten* v. *Deyo*, 2 Wend. 424;
*Nicholson* v. *Conner*, 8 Daly, 212; *Besson* v. *Southard*, 10
N. Y. 240; *Kavanagh* v. *Wilson*, 70 id. 179; *Sippel* v. *State*,
99 id. 284.) The presentation of Exhibits 1 and 2 to the
executive committee and to Payne were not privileged com-
munications, upon the evidence. (*Cammeyer* v. *U. G. L.
Churches*, 2 Sandf. Ch. 186; *People's Bank* v. *S. A. R. C.
Church*, 39 Hun, 198; *Moore* v. *Manf. Bank*, 123 N. Y.
420; *White* v. *Carroll*, 42 id. 161.) The question of express
malice is for the jury, notwithstanding privilege and probable
cause appear. (*Hamilton* v. *Eno*, 81 N. Y. 122; *Klinck* v.
*Colby*, 46 id. 427; *Decker* v. *Gaylord*, 35 Hun, 584; Starkie
on Slander, 292, 293; *Fowler* v. *Bowen*, 30 N. Y. 25.)

*John D. Kernan* for respondent. All the communications
made to the executive committee were privileged and of that
class where there is no liability without proof by the plaintiff
of both express malice and want of probable cause. (36 Hun,
155; *Van Wyck* v. *Aspinwall*, 17 N. Y. 190–193; *Hamil-
ton* v. *Eno*, 82 id. 124; *Ormsby* v. *Douglas*, 39 id. 479;
*Woodbeck* v. *Keller*, 6 Cow. 118; *Clark* v. *Dibble*, 16 Wend.
601; *Hopkins* v. *Smith*, 3 Barb. 599; *Lomer* v. *Meeker*, 25
N. Y. 361; *Ellwood* v. *W. U. T. Co.*, 45 id. 549.) There is
no longer any authority for the notion that the motive with
which a duty is done, or a right is asserted, can alone make
the doing of the duty, or the assertion of the right actionable.
(*Phelps* v. *Nowlen*, 72 N. Y. 39; *Kiff* v. *Youmans*, 86 id.
324.) The exception as to evidence charging unchastity is
not well taken. (1 Rumsey on Pr. 288; *Howard* v. *Sexton*,
4 N. Y. 157.)

O'BRIEN, J. The principal question in this case arises upon an exception taken to the direction of a verdict for the defendant upon the fifth trial of an action of slander. The defamatory charge is alleged to have been made by the defendant of and concerning the plaintiff, in the month of February, 1878, and consisted, in substance, of a statement to B. J. Beach, and other worthy citizens, that the plaintiff on January 19, 1878, mailed to the defendant's wife, at Rome, N. Y., a sealed prepaid envelope, directed to her, in which was inclosed a printed letter or circular containing obscene and indecent matter. The defendant was, at the time, and still is the principal of the Institution for Deaf-Mutes at Rome, one of the charitable institutions of the state. The plaintiff was then the superintendent of the sewing department, and her duty was to superintend the making of clothing for the children, in the institution, and also to instruct a class in sewing. The general management of the institution is committed by the statute to a board of trustees, or directors, with power to enact by-laws or rules and regulations for the government of the institution, and Mr. Beach was the president of the board. Under the by-laws adopted the actual management is, to a great extent, devolved upon an executive committee composed of five members of the board, of which the president was always to be one. The defendant was really the executive head and manager of the institution. It was his duty and his right under the rules and regulations adopted for its government to attend the meetings of the board, to make reports in writing, and to participate in the discussions. Subject to the directions of the board, he had charge of the technical, moral and religious instruction of the inmates. He was required to regulate the course of instruction in the classes, examinations, exhibitions, religious services in the chapel, and was himself to have the immediate charge of the advanced class. He was required to conduct all the correspondence, employ and dismiss all persons necessary to be employed, unless officers of the institution or persons appointed by the board, and, with the approval of the execu-

tive committee, he had power to suspend any professor, officer or teacher appointed by the board. It was his duty to keep a book in which should be entered all events worthy of note relating to the institution, which was to be the property of the trustees, and submitted to them at the quarterly meetings, and always open to the inspection of the executive committee.

There is no dispute as to the fact that the defendant received the letter referred to in the regular mail of the institution. The proofs show that he gave it to his wife, to whom it appeared to be directed, and that she opened it and, after looking at its contents, and ascertaining its nature and character, handed it back to him. An inspection of the paper indicates that it had been cut from a book or pamphlet prepared for advertising what were called female remedies of one Dr. Goff of Syracuse. At the bottom of one of the pages it is signed "A Lady Friend" in pencil, the writing appearing to be that of a woman, and in another part of the paper, following an advertisement of certain appliances for females, there was written, in apparently the same hand in pencil, a statement that she, whoever the author was, had used them and that they would accomplish the desired purpose. Without further description, it is sufficient, for every purpose of this appeal, to say that it was grossly obscene and indecent, and the charge that the plaintiff was the author of it, or rather sent it to the defendant's wife, through the mail, was defamatory and *prima facie* actionable. The defendant examined the writing in the body of the paper and the directions on the envelope and compared it with signatures and letters of the plaintiff and others in the institution, which were in the office, and he then formed the opinion that the plaintiff was the person who sent it. Having made this examination, he took the letter and papers to Mr. Beach, the chairman of the board and of the executive committee, and consulted with him in regard to the matter. In this interview, it may be assumed from the proof, that the defendant expressed the opinion, in words of more or less positiveness, that the plaintiff was the person who sent the letter. Mr.

Beach, after an examination of the letter and comparing it with the genuine letters and signatures of the plaintiff, which were before him, agreed with the defendant, but, for greater caution, suggested that all the papers be sent to an expert in New York for examination and his opinion. This course was adopted and all the papers were sent and in due time returned, with the expert's opinion that the address on the envelope and the pencil writing in the circular were written by the plaintiff. A meeting of the executive committee was then called and the plaintiff notified, and she was present at the meeting and so was the defendant. There is considerable conflict in the testimony with respect to what actually took place at the meeting and especially as to what the defendant said, but the jury could have found that he then and there stated and charged, in substance, that the plaintiff sent the letter, and she was discharged under the direction of the committee that day.

The court held that the defense of privilege, contained in the answer, was established and that there was no question for the jury. The General Term has repeatedly reversed judgments in the plaintiff's favor (24 Hun, 395; 36 Hun, 149; 13 State Rep. 211), and has finally affirmed the judgment entered upon the verdict directed against her. There can be no doubt that the occasions upon which the defendant is shown to have made the charge were privileged, the only question being as to its nature and extent. The defendant occupied an important and responsible office under the authority of the state, involving the performance of duties of the most varied and delicate nature, upon the proper discharge of which the efficiency and welfare of the institution largely depended. It was his duty to watch and carefully observe the moral conduct, not only of the children committed to his charge, but even in a greater degree, the teachers, upon whose influence and example so much, for good or evil, depended. It was essential that he should be at liberty to communicate freely with the governing body as to any matter touching the conduct of either the teachers or the pupils. This he could not do if hampered

by the fear of penalties that could follow errors of judgment or mistakes, as to who was or was not properly chargeable with improper conduct. In some cases the privilege which the law gives to persons in such circumstances, to speak freely, is absolute, however malicious the intent or false the charge may be. This immunity applies to words defamatory of the character of another spoken by a member of a legislative body in debate or in due course of proceedings, by counsel in arguments pertinent to the issue before the courts of justice, by military officers in reports or statements to their superiors and all acts of state. From considerations of public policy and to secure the unembarrassed and efficient administration of justice and public affairs, the law denies to the defamed party any remedy through an action for libel or slander in such cases. (*Hastings* v. *Lusk,* 22 Wend. 410 ; *Moore* v. *M. N. Bank, etc.,* 123 N. Y. 420.)

The courts have refused to extend the class of cases where absolute privilege applies, and I shall assume it does not apply to this case, though it would perhaps be difficult to make a satisfactory distinction, founded upon principle, between the case of defamatory words in a petition to a legislative body or committee, or the reports of military officers, and the character of the charge in this case and the circumstances under which it was made. If the defendant believed that the plaintiff was the person who sent the letter it was his duty to communicate the fact to the executive committee and the president, all of whom had a corresponding duty with respect to everything that concerned the welfare of the institution, and his statements, under such circumstances, were confidential and privileged until the plaintiff removed the privilege by proof, on her part, of actual, or, as it is sometimes called, express malice or malice in fact. (*Byam* v. *Collins,* 111 N. Y. 143 ; *Vandersee* v. *McGregor,* 12 Wend. 545 ; *Van Wyck* v. *Aspinwall,* 17 N. Y. 190 ; *Washburn* v. *Cooke,* 3 Den. 120 ; *Hemmens* v. *Nelson,* 36 Hun, 155 ; *Moore* v. *M. N. Bank, supra.*)

This kind of malice which overcomes and destroys the

privilege is of course quite distinct from that which the law, in the first instance, imputes with respect to every defamatory charge, irrespective of motive. It has been defined to be an " indirect and wicked motive which induces the defendant to defame the plaintiff." (Odgers on L. & S. 267.) Unless we can find in the record in this case some proof which would warrant the jury in finding the existence of such wicked motive, on the part of the defendant, when he made the charge in question, then the direction of the learned trial judge was correct and the judgment must stand. The question is not whether the charge is true or false, nor whether the defendant had sufficient cause to believe that the plaintiff sent the letter, or acted hastily, or in a mistake, but the question is, the occasion being privileged, whether there is evidence for the jury that he knew or believed it to be false. The plaintiff may have arrived at conclusions without sufficient evidence, but the privilege protects him from liability on that ground until the plaintiff has overcome the presumption of good faith by proof of a malicious purpose to defame her character, under cover of the privilege. The plaintiff must be able to point to some evidence in the record that would warrant the jury in imputing this guilty motive to the defendant before her appeal can be sustained. As malice was an essential element of her case, not to be implied from the charge itself, but quite the contrary from the occasion on which it was made, the burden of establishing that fact was upon her. The record discloses no motive whatever on the part of the defendant for any charge against the plaintiff which he knew to be false, or did not believe to be true. We must, therefore, look through the evidence for proof of malice without any apparent reason or motive for it. In the first place, whoever sent the letter, there is no dispute as to its character or the fact that the defendant received it. Having received it, nothing could be more natural on his part than to form some opinion from the facts at hand as to who sent it. He knew the plaintiff's handwriting, or at least he supposed he did. With this knowledge and a careful comparison of the letter with the genuine writing

of the plaintiff, which he had at hand, he says that he formed the opinion that she was the person who sent the letter. Then, for greater caution, he consulted Mr. Beach, who was not only a lawyer of experience but the president of the governing body, having general charge of the institution, and of the executive committee, and he agreed in that conclusion. Whatever statements he made to Mr. Beach and whatever opinions he expressed, however strong or erroneous, they were of the most confidential character. But as there was still the possibility of mistake present to their minds, both concurred in the suggestion to procure the opinion of a competent expert, and it was procured, with the result already stated. Thus far there is not the slightest ground for imputing bad faith to the defendant, because every move is consistent with the conduct of a man honestly seeking for the truth. The learned counsel for the plaintiff has collected some facts and circumstances that antedate the receipt of the letter, which he contends tend to prove malice. There is some proof that in the fall of 1877 the defendant criticised the plaintiff's conduct and said something about discharging her. It was the defendant's right and duty to freely criticise and even reprove the plaintiff or any other teacher, whenever in his judgment it was necessary, and the exercise of that right in the performance of that duty is not evidence of malice or of that wicked design to assail the plaintiff's reputation without cause. If this were not so the head of such an institution could not per form his duty without incurring the charge of acting from malicious motives. There was evidence in the case that on the evening of January 19, 1878, the plaintiff went from Rome to Utica, returning on the 5:25 train the same day. This was for the purpose of showing that she could not have put a letter in the mail received when this one was. The absence of the plaintiff for a very short time on the afternoon that the letter was received, proves very little that is material to the case. If it had the slightest bearing on any question it certainly did not prove nor tend to prove that the defendant knew she was absent, or knew that she could not have

mailed the letter, or that she did not mail it, and nothing short of such proof could have any bearing on the question of malice. There is really but one theory of the case upon which actual malice can be imputed to the defendant and that is the one which the counsel for the plaintiff urges, and to which most of the testimony in the case is directed, that he himself sent this letter and circular to his wife. · Of course this involves the further hypothesis that he sent it for the purpose of basing upon it a false charge against the plaintiff as its author and sender. It need not be said that if this theory is correct in fact, it establishes malice of the blackest kind and if there is any proof of it the case should have been submitted to the jury.

In searching for any evidence to sustain this theory, or tending to sustain it in the slightest degree, the mind naturally looks for some motive on the part of the defendant that could possibly move him or any one to defame the plaintiff's reputation by such dark and crooked methods, and none whatever is suggested. On the contrary, the proof is that but a short time before the transaction in question she was an applicant before the board of trustees for an increase of salary, and the defendant aided and sustained her application, and it was successful. In the summer of 1877 the defendant was married and visited England with his wife. While there he received a letter from the plaintiff, informing him in regard to the progress of affairs at the institution, and containing strong expressions of gratitude and friendship towards him. The plaintiff, on the stand, says that she was not quite sincere in these professions of gratitude and friendship. However that may be, there is not the slightest proof that the defendant understood the letter in any other sense than that plainly expressed upon its face. There is some proof of an incident connected with this letter that, in behalf of the plaintiff, it is insisted tends to prove malice. The plaintiff testifies that in the fore part of January, 1878, she went to the defendant's house to get a key and found him sitting at a desk with a pen and the letter she had written him while in England before him. On seeing her, she says that

he gathered up the letter and put it in a drawer, and then asked her what she wanted, to which she replied "my letter that I wrote you while in England." He then informed her that the letter had been burned, and then she asked for the key and left. The letter, as already observed, was produced at the trial and appears in the record. The plaintiff's version of these transactions is flatly contradicted by the defendant. But assuming, as we must, that she knew the letter to be the one written by her by the glance she was able to give it, and that she demanded it when she went to the house for another purpose, it is difficult to see how it bears on the question of malice. At best it proves that the defendant gave a false excuse for not returning a letter which belonged to him and which the plaintiff had no right, so far as appears, to demand. The fact, if it be true, that the plaintiff demanded its return, is as high evidence of malice or some sinister purpose on her part as was the defendant's refusal to return it upon grounds that turned out to be false, and neither furnish any proof of malice.

The evidence in support of the theory that the defendant himself mailed the letter, which the learned counsel for the plaintiff claims should have been submitted to the jury, consists of two items taken from the testimony of his client. In the complaint the plaintiff stated that at the meeting of the executive committee, when she desired to look at the contents of the letter, the defendant refused to allow her to see it, stating that it was obscene and not fit or proper for a lady to see, and that she did not see the contents of the letter so as to read the same. On the last trial her testimony in substance was that she took the letter in her hand and partially drew out the printed paper from the envelope, when Mr. Beach snatched or took it from her, saying it was not fit for her to see. She claims that it then had writing in ink on the margin, no word of which she could give, but that in her opinion the "t" in some word was made by defendant or at least looked like his. Her reason for this conclusion was that the defendant crossed the "t" in the middle, and not at the top, which was an unusual thing and peculiar to him.

The paper when produced in court had no writing whatever on the margin, and no writing in ink upon any part of it, but the plaintiff's explanation of that is that the margin with the writing has been cut off by some one in the interest of the defendant. An inspection of the paper lends no support to this claim, and as the defendant, and practically all the executive committee, say there never was any writing in ink on the paper, or any other writing, except that in pencil already described, it can scarcely be claimed with any reason that the hurried glance which the plaintiff had of a single letter, and her opinion that it resembled the defendant's mode of making the same, was any evidence of the important fact that the defendant's handwriting was on the paper, competent to submit to a jury. Moreover, this theory is a departure from the original position of the plaintiff on the first and second trials. Then she testified that the writing was *on* the paper, but as she was confronted with the fact that neither writing in ink or erasure was visible upon an inspection of the letter, on the third trial she attempted to avoid the difficulty by claiming that the margin upon which the writing was had been cut off, and this claim she subsequently adhered to. On the last trial this claim was reinforced by another and, if possible, of a still weaker character. The plaintiff testified that in her opinion the "s" in "Mrs." at the commencement of the direction on the envelope was written by defendant. There was no other word or letter on the paper envelope that she would claim was written by him. At every trial down to the last the plaintiff testified that the direction on the envelope was, in her opinion, the writing of another lady whom she named, and who had been, or was then, connected with the institution. On the third trial her counsel in open court, and in her presence, conceded that none of the writing on the envelope was that of the defendant. To submit the case to the jury upon such evidence would in my opinion be little short of a travesty upon the administration of justice. The theory that the defendant sent this letter to his wife is devoid of evidence or probability. It ascribes to him not only a dark and wicked design to

defame the plaintiff's reputation, but also the knowledge that he could do it with impunity, under cover of a privileged occasion, which is a necessary part of the plot, and attributes to a layman an intimate knowledge of the law of slander and libel quite extraordinary. There were so many other and simpler methods of gratifying malice, if it existed, available to the defendant, that the suggestion to his mind of such a complicated scheme savors more of fiction than truth. Still, however improbable it may appear, if there was any evidence of it, the question was doubtless for the jury. But the only proof given was an attempt to connect the defendant with some part of the writing on the letter or envelope as the author, and this, as we have seen, utterly failed. It is now well settled that to show that the charge was false is not evidence of malice which entitles the party to have the question submitted to the jury. (*Fowles* v. *Brown,* 30 N. Y. 20.)

A privileged communication may be defined to be a statement or charge, defamatory of the character of another, but made under such circumstances as to rebut the legal inference of malice. (*Klinck* v. *Colby,* 46 N Y. 427; *Hamilton* v. *Eno,* 81 id. 116; *Lewis* v. *Chapman,* 16 id. 374.) The charge in question was one of that character, and the burden was thrown upon the plaintiff of giving proof of actual malice sufficient to take the case to the jury. Whether the plaintiff met the requirements of the case in this respect rendered it necessary to examine the testimony more minutely than usually falls within the province of this court, and we think she has not.

The most that can possibly be said is that there was a scintilla of evidence on the question of malice which, under the doctrine of some older cases, was sufficient to carry the question to the jury. But this court is now firmly committed to the more modern and reasonable rule, that where there is no evidence upon an issue before the jury or the weight of evidence is so decidedly preponderating in favor of one side, that a verdict contrary to it would be set aside, it is the duty of the trial judge to nonsuit, or to direct a verdict, as the case may

require.  In a recent decision in which the opinion was given
by Judge GRAY, after an elaborate examination of the author-
ities, which are there collected, this court has given the fullest
assent to the rule.  (*Leinkauf* v. *Lombard*, 137 N. Y. 417.)
I will only add that, in my opinion, there was much more evi-
dence to submit to the jury in that case than can be found in
the record in this upon the questions with respect to which
the plaintiff's counsel requested the submission of the case.

Another exception remains to be considered of quite a dif-
ferent character.  In a separate cause of action it is stated in
the complaint that at a date subsequent to the transactions
which have been discussed, the defendant, in the presence of
another person, stated of and concerning the plaintiff, that she
" entertained gentlemen callers at late hours and he thought it
did not speak well for her, that he did not like the plaintiff for
these reasons ; " that she " entertained gentlemen company at
all hours of the night ; that young men had been seen leaving
plaintiff's sleeping room at different hours of the night."

On the trial, the plaintiff's counsel offered some evidence
tending to prove that the defendant, in a conversation with
the person named in the complaint, used some of the words
charged in the pleading, not, as he stated, to prove malice in
making the other charge, but to support another and inde-
pendent cause of action.  The words offered were that " she
was in the habit of entertaining gentlemen callers at all hours
of the night."  The court held that, standing alone, they did
not necessarily impute unchastity, and were not admissible to
sustain the separate cause of action, which was bad for want
of sufficient facts stated.  The plaintiff's counsel excepted to
the ruling.  The statute now makes words imputing unchastity
to a woman actionable, without proof of special damages (Code
Civ. Pro. § 1906), but it has not dispensed with the necessity
of innuendoes pointing to an injurious intent or meaning
in the use of equivocal words.  It cannot be held that these
words necessarily, and as matter of law, charge unchastity.
That would depend upon who the callers were, and their
purpose in calling and her purpose in receiving them.

It is possible that a call upon a lady, at a later hour than that prescribed by conventional rules, by gentlemen relatives or friends, may be entirely innocent. It is quite possible also that a jury could find that the defendant intended, by the use of the words, to make a defamatory charge. The intent of the defendant and the sense in which the words were used becomes in such cases an important inquiry, not permissible at the trial without an allegation of some kind in the pleading that he intended to impute unchastity. Such a charge and even words of much plainer and unmistakable import were not actionable at common law without allegation and proof of special damages. (Odgers on L. & S. p. 84, note a; *Anonymous*, 60 N. Y. 262.)

It has been held that to say of a female that "she is a bad girl," or a "bad woman," was not actionable, even with an innuendo averring that the intent was to charge her with being a prostitute, unless, at the same time, there were averments and a colloquium that would warrant the innuendo. (*Snell* v. *Snow*, 13 Met. 278; *Fitzgerald* v. *Robinson*, 112 Mass. 380; *Riddell* v. *Thayer*, 127 id. 489.) While this court would not be inclined to go so far or to adhere to so strict a rule, yet we think that a pleading, in an action of slander, averring the use of words like these, that may or may not be harmless, according to the intent of the party using them and the sense in which they are used, is not sufficient without an innuendo or allegation of some kind that they were used in a sense to render them actionable. The pleading was, therefore, insufficient and there was no error in excluding the testimony offered.

The other exceptions in the case present no ground of error, and the judgment should, therefore, be affirmed.

All concur, except PECKHAM and MAYNARD, JJ., dissenting.

Judgment affirmed.