PEOPLE, PLAINTIFF AND APPELLEE, v. RODRÍGUEZ, DEFENDANT
AND APPELLANT.

APPEAL from the District Court of Guayama in a Prosecution
for Libel.

No. 1937.—Decided July 24, 1923.

LIBEL — PRIVILEGED COMMUNICATION — MALICE — BURDEN OF PROOF — PROBABLE
CAUSE—GOOD FAITH—SUSPECTED CRIMES.—The defendant, a municipal com-
missioner of education, was convicted of criminal libel alleged to have been
published in a letter addressed to the Governor. The letter rehearsed a story
that had been told to the defendant in the presence of a number of witnesses
by the brother-in-law of the supposed offender, and, if true, the story in-
volved the commission of a felony by a member of a municipal assembly.
The defendant stated in the letter that the person by whom the story was
told to him had since died, and expressed some doubt as to the truth of all
of the details, but suggested that the matter should be investigated. It was
shown at the trial that before writing the letter the defendant had received
other information from different sources indicating that there might be some
basis in fact for the story, and there was no intimation that the defendant
had any reason to doubt the veracity of the brother-in-law. *Held:* That the
communication addressed to the Chief Executive was plainly privileged and
that the facts outlined do not suffice to show malice, even if the defendant
had not voluntarily assumed the burden of proving probable cause. In-
dividual citizens, when acting in good faith and on reasonable grounds, should
feel free to report to the proper authorities suspected crimes without fear
of prosecution.

The facts are stated in the opinion.

*Mr. José Soto Rivera* for the appellant.

*Mr. José E. Figueras, Fiscal,* for the appellee.

MR. JUSTICE HUTCHISON delivered the opinion of the court.

Defendant was convicted of an alleged criminal libel con-
tained in a letter to the Governor. The letter rehearsed a
story that had been told defendant, which, if true, involved
the commission of a felony, or a series of felonies, by a
member of a municipal assembly. The writer stated that
the person by whom this statement was made had since died,
and expressed some doubt as to the truth of all the facts
stated, but suggested that the matter ought to be investigated.

The evidence adduced at the trial disclosed the fact that
before writing the letter the writer had received other in-
formation from other sources indicating that there might

be some basis in fact for the tale, which had been told by a brother-in-law of the supposed offender. The prosecuting witness herein says that relations between himself and his brother-in-law were strained, but there is no intimation that defendant knew this, or any other circumstance that might have caused him to doubt the veracity of the brother-in-law. This brother-in-law made the statements quoted in the letter in the presence of a number of witnesses, one of whom testified at the trial. This witness had also been informed in regard to the same matter which came to the knowledge of defendant, after hearing the narrative of the brother-in-law.

Indeed, the complaining witnesses in the case last mentioned stated the alleged facts to a number of people on the day after the offense was said to have been committed. They also summoned an attorney from San Juan, who made a trip across the island to investigate the matter within a few days after the date last above mentioned. As a result of this investigation the attorney was convinced that an offense had been committed, but, by reason of the reluctance of witnesses to testify and other circumstances, did not think that the case could be made strong enough to warrant a prosecution, and so the matter was dropped.

The brother-in-law, as quoted in the letter to the Governor, said that a complaint had been made to the district attorney and that the case was "sleeping the sleep of the just" in his office. After the letter had been referred to the district attorney for investigation, defendant again wrote the Governor complaining of the manner in which the investigation was being conducted, indulging in some rather severe criticism of the district attorney and other public officials and suggesting that the matter be placed in the hands of some other officer. After the present prosecution had been instituted, defendant also sent a telegram to a certain newspaper purporting a correction of a previous report said to have been based on data obtained from the Department of

Justice.    The evidence for the Government also disclosed that no complaint against the prosecuting witness herein had ever been filed in the office of the district attorney or in the municipal court or in the police station.

The communication addressed to the Chief Executive was plainly privileged and the circumstances last above outlined do not suffice to show malice, even if defendant had not voluntarily assumed the burden of proving probable cause. See *Franco Soto* v. *Martínez,* 29 P. R. R. 221, and *Coll* v. *Gandía, idem,* 933.

That, in the telling of a story, a dusty streak should become a rural school in recess, the office of a municipal cfficial should take on the appearance of a neighboring grove and, in order to complete the new setting, a teacher should play the role of an indignant mother, is not amazing.   Not only do stranger things frequently occur in fiction, but a somewhat similar metamorphosis is a matter within the daily experience of any careful observer of those who are constantly hearing and telling some new thing.   Mere poetic license does not suffice to convert into malicious libel a narrative thus colored somewhat by the imagination of the raconteur and repeated in good faith by one who hears it, not only without any reason to suspect an absolute absence cf any foundation in fact, but after having received additional information pointing to the opposite conclusion.

It may be that an indictment charging the facts set forth in the letter to the Governor would not sustain a conviction of the prosecuting witness herein on the testimony of the witnesses for the defense; but aside from the question of variance, if that testimony had been adduced upon a trial of such prosecuting witness for the offense imputed to him and a trial judge or jury had accepted such testimony as true, then a judgment or verdict based thereon would hardly be disturbed.

It was not incumbent on defendant, of course, to prove

that the prosecuting witness was guilty of the offense referred to in the alleged libelous writing, but perhaps by reason of defendant's own misconception of his duty in this respect the trial in the court below seems to have proceeded more or less upon some such theory.

In disposing of the case the trial judge said that the only question to be decided was whether the action of the defendant in writing the letter had been "justified;" that the right and the duty of every citizen to report the commission of crime must be exercised with the greatest caution and when the informer is convinced of its absolute certainty (*completa certeza*); that the defense had tried to prove the prosecuting witness guilty of a crime, notwithstanding the admission of the defense itself (testimony of the attorney, *supra*) that the evidence was insufficient to sustain a prosecution; that the prosecuting witness could not be presumed to have committed an offense while the law regards him as innocent even when under a formal charge; that, as to the element of malice, if defendant had made a slight investigation of the facts imputed to the prosecuting witness he would have become convinced that the same were untrue and would not have written the letter; that, unfortunately, in Porto Rico means are being employed to destroy well-established reputations by unscrupulous persons who do not hesitate to make use of calumny and lies in order to injure reputations very much above the moral level of the unscrupulous individuals aforesaid, and that the action of the defendant in writing the letter had not been justified.

The *fiscal*, in his brief, does not discuss the merits of the appeal, but insists upon a motion to strike the statement of the case, and, the information being sufficient, upon an affirmance.

There is not much to be said in favor of the statement. The responsibility for the situation as it now stands, however, does not rest entirely on the shoulders of appellant.

The statement, as originally presented below, contained apparently everything that was said by court or counsel during the trial, without regard to any question to be raised on appeal. Its one redeeming feature was a statement in narrative form of the testimony. The amendments proposed by the *fiscal* consisted, for the most part, in substituting the stenographic record for the narrative statement in the case of each witness, without any very apparent reason for the proposed substitution. The district judge referred the matter to the ex-judge who had tried the case and he certified the whole record in so far as the statement of the case is concerned, as it stood, the original statement, the motion of the *fiscal* and the order of reference, as a true statement of all the facts, including the amendments allowed by him.

It is unfortunate that more than twenty years after the adoption of a Code of Criminal Procedure this court should be called upon to examine such a record. We have derived no pleasure and but little satisfaction from the laborious process of arriving at some understanding of the essential facts disclosed by the evidence adduced at the trial. Ordinarily, of course, in such circumstances, no investigation or discussion of the merits would be attempted. But in the instant case the task has not proved, as prophesied by the *fiscal,* impossible; and it is more important that the individual citizen, when acting in good faith and upon reasonable grounds, should feel free to report to the proper authorities a suspected crime without fear of prosecution than that the technical rules of procedure be strictly observed in any particular case. Nor should the informer, whatever else is required of him, be given to understand that he must make a thorough investigation, examining witnesses and preparing a case for trial or submission to a grand jury, before divulging the facts in his possession, under penalty of exposure to a criminal proceeding in case some prosecuting attorney or privately employed counsel, after such an investigation and

upon mature deliberation, should finally determine that the evidence available is inadequate to sustain a prosecution, notwithstanding the opinion of such investigator that an offense had been, in fact, committed.

*Joseph* v. *Baars*, 135 Am. St. Rep. 1076, was a civil action for slander. The second cause of action stated in the complaint alleged the charge to have been made by defendant through the telephone "to one Tarnutzer." As a separate defense to this cause of action defendant set up "that Tarnutzer was the village marshal of Prairie du Sac" and that defendant had telephoned the fact to said Tarnutzer, believing him to be an officer of the law authorized to make arrests for crime, solely for the purpose of procuring the arrest of said K. and without malice toward the plaintiff."

In disposing of the case the Supreme Court of Wisconsin said:

"There must be good faith belief in the fact that a crime has been committed and good faith belief that the person to whom communication is made is a proper person or officer with whom the information should be lodged, to the end that justice should be vindicated. When the defendant has shown these two facts, he has undoubtedly lifted the burden of proof. He has then shown *prima facie* at least that his communication was made in the course of duty, from a sense of duty, and with an honest belief in its truth. He is not required to go further and show that a shrewder man would have discovered the falsity of the supposed facts. The question is: Did he honestly believe what he said to be true? Not whether some other man placed as he was would have believed it: Odgers on Libel and Slander, 4th ed. p. 330. His belief must of course be founded upon some information. Mere reckless statements, or statements based on nothing in the way of information, are not protected, because they cannot be said to have been made in good faith; but statements honestly believed to be true, based upon some tangible information and made from an honest desire to promote public justice, and made to the proper officer or one honestly supposed to be the proper officer, are protected, though some more prudent person would not perhaps have believed in the truth of the information on which the statement is based: Clark v. Molyneuz, L. R. 3 Q. B. D. 237. When

the *prima facie* case of privilege has been thus made by proof that the communication was made in the course of public duty, from a sense of public duty, and with an honest belief in its truth, it becomes the duty of the plaintiff, as in other cases of communications conditionally privileged, to prove actual malice by some facts tending to prove a malicious or guilty motive: Calkins v. Summer, 13 Wis. 193, 80 Am. Dec. 738; Hemmens v. Nelson, 138 N. Y. 517, 34 N. E. 342, 20 L. R. A. 440; Dale v. Harris, 109 Mass. 193; 8 Ency. of Ev. 220.''

The same principle, if sound, would seem to apply *a fortiori* to a prosecution for criminal libel. Newall, 3rd ed., 1158, section 1114.

In the same volume, at pages 601 and 608, sections 595 and 601, we find the following:

''It is a duty which every one owes to society and to the state in which he lives to assist in the investigation of any alleged misconduct and to promote the detection of crime. All information given in good faith in response to any inquiries made with this object is clearly privileged. But this duty does not arise merely when confidential inquires are made. If facts come under any person's knowledge which lead him reasonably to conclude that a crime has been or is about to be committed, it is his duty at once to give information to the public authorities or to the persons interested.

''The party complaining must be careful to apply to some person who has jurisdiction to entertain the complaint, or power to redress the grievance, or some duty or interest in connection with it. Statements made to some stranger who has nothing to do with the matter cannot be privileged. If a party applies to the wrong person, through some natural and honest mistake as to the respective functions of various state officials, such slight and unintentional error will not, in America, take the case out of the privilege. But if he recklessly makes statements to some one who is, as he ought to have known, altogether unconcerned with the matter, the privilege is lost.''

In Ruling Case Law, at page 358, section 106, vol. 17, the rule is stated thus:

''A person who makes a communication to a peace officer concerning the commission of crime is not liable to an action for libel or

slander, according to the weight of authority, if the communication was made in good faith for the purpose of bringing an offender to justice.''

And a case note to *Miller* v. *Nickolls*, 4 L. R. A. (N. S.) 149, says:

''The right to exemption from liability for libel or slander growing out of an informal communication made to an officer of the law with respect to the misconduct or criminal offense of another, on the ground that such communication was privileged, seems to depend on the question whether it was made in good faith, in the discharge of a duty to the public, to forward legal investigation, or for some other justifiable purpose, or whether it was made to vent malice or spite.''

See also *Flynn* v. *Boglarsky* and note to *Beshirs* v. *Allen*, L. R. A. 1915 E, 413.

In the case at bar, not only was the alleged libelous communication addressed to the Chief Executive, but it was written by a municipal commissioner of public education who had behind him a record of some fifteen years in the service of the Insular Government, eleven years of experience as a teacher in the public schools and four years as an insular health inspector. It emphasizes the fact that the complaining witness herein was then a member of a municipal assembly. It calls attention to the local political situation as typical of an alleged deplorable state of affairs existing generally throughout the Island. It refers to, and seems to have been a sort of afterthought or postscript to, another letter enclosed therewith requesting an investigation of other matters. It says that the writer received the information contained therein precisely on the same day of his return from San Juan. It concludes with an assurance that if the former executive to whom it was addressed had come to do justice, he would find much work to be done. It is marked ''Confidential.'' The whole tone of the letter implies some

previous interview or understanding, if not an invitation or request for information.

A letter of transmittal over the signature of a former Attorney General reads as follows:

"District Fiscal Guayama, P. R.—Sir: In connection with the letter and report submitted by you in the matter of. Mr. Arsenio Rodríguez Morales. I am returning herewith all papers connected with the case in order that you may determine whether or not it is proper to start a prosecution for libel against him. It is necessary for you to determine, before so doing, whether the statements made by him were made maliciously, and you may, in arriving at that conclusion, take into consideration the fact that these manifestations seemed to have had no evidence of any sort on which to stand. You will inform me of the action taken by you in this matter."

It is a significant circumstance that the writer of this letter found upon the face of the alleged libelous communication no evidence of malice. The conclusion as to absence of probable cause is based upon the report of the *fiscal* who made the investigation and later conducted the prosecution herein, under the sting of resentment due to the incidental reflection upon his own previous official conduct. Nor do we find in the letter described in the information any of the earmarks of malice. Appellant's concept of civil duty may be open to criticism, but there is. much room for argument on this point, and his letter to the Governor discloses no dishonesty in thought nor insincerity of purpose.

At the trial defendant testified that he accepted in good faith the story told him by the' brother-in-law; that he had no reason to doubt it; that after talking with a mother and her daughter, said to be thirteen years old, witness thought that the child, being of school age, might be the girl of whom the brother-in-law had spoken; that the case made a deep impression and seemed to witness to be a serious matter that should not "remain immune;" that witness found indications that there might be something in it; that was why he wrote

the letter; that in the absence of such indicia he would not have written; that witness knew that it had occurred but did not remember the name of the father; that witness did not report the matter to the *fiscal* because of the distrust with which witness was inspired.

On cross-examination defendant was heckled at some length by the *fiscal* with reference to a previous sworn statement under pretext of laying a predicate for impeachment. The record indicates that the defense finally announced that it would accept the statement referred to as having been made by defendant, whereupon it was offered in evidence by the *fiscal* and admitted without objection. That document seems to have been overlooked by the *fiscal* in preparing his proposed amendments to the record, and is not referred to by the trial judge in his opinion. There is nothing in the record to contradict, and much to corroborate, the testimony of defendant.

The alleged libelous writing was on its face, as we have said, *prima facie* privileged, and we find no evidence of malice on the part of the defendant.

The supreme executive power in this Island is vested in an executive officer whose official title is "The Governor of Porto Rico." He has general supervision and control of all the departments, including the Department of Justice, "in so far as not inconsistent with the provisions of" the Organic Act, and is made responsible for the faithful execution of the laws.

Whether or not the Governor is the proper authority to whom the commission of a felony by a member of a municipal assembly should be reported by a member of the administrative council of an adjoining municipality, who believes that it would be useless to take the matter up with the local district attorney, is a question that was not raised in the court below nor by either of the parties to the appeal

in this court. It is a question the final determination of which may be left in abeyance, without impropriety, until the point has been so raised.

But, however this may be, we are persuaded, after careful consideration of all the evidence, that appellant himself never doubted for a moment that he was addressing the proper authority.

The judgment appealed from must be

Reversed.

Chief Justice Del Toro and Justices Aldrey and Franco Soto concurred.

Mr. Justice Wolf concurred in the judgment.

CONCURRING OPINION OF MR. JUSTICE WOLF.

Under section 1687 of the Revised Statutes defining libel and slander malice is not to be presumed when a person has written to an insular official upon probable cause with the intention of serving the public interest or of securing the redress of a private wrong. Here, as set forth in the majority opinion the evidence showed that defendant had the intention of serving the public interest or of securing the redress of a private wrong. For this reason I concur in the majority opinion. I do not agree that a letter written to the Governor is *prima facie* privileged, but so directed a defendant may more readily show his intention of serving the public interest or securing the redress of a private wrong.