Dye, J.
(dissenting). In this action for libel the defendant interposed an answer setting up seven separate and complete defenses and one partial defense which the courts below have *115 unanimously agreed give rise to questions of fact which should be resolved at a trial. We think so too. However, this court is about to grant summary judgment dismissing the plaintiff’s complaint on the ground that, as matter of law, the defendant is immune from liability since the alleged defamatory statements were absolutely privileged. We cannot agree.
The defendant at the time was President of the Borough of Queens. The alleged defamatory statements were contained in a letter written by him to the Mayor of the city respecting an investigation he had made into a condemnation proceeding conducted by the City of New York for .the taking of certain land located in the borough for a public purpose. Although his authority to conduct such an investigation is indeed dubious (New York City Charter, § 82), such issue is deemed of no moment since under the majority view the privilege of absolute immunity is available as a complete defense. Thus, by a decisional law this court is extending an absolute immunity to minor executive officials from liability for defamatory statements made in the course of their official duties, a privilege never heretofore enjoyed by that group of officials. Until now, such privilege has been available through constitutional sources only to the members of the State Legislature (N. Y. Const., art. Ill, § 11) which privilege parallels a similar immunity enjoyed by Federal lawmakers (U. S. Const., art. I, § 6, cl. 1), a limitation traceable to the English Bill of Rights of 1688 (see Gray, Private Wrongs of Public Servants, 47 Cal. L. Rev. 303 [1959]). The absolute immunity which is enjoyed by members of the State Judiciary in respect to opinions delivered to the New York State Reporter is derived from statute (Judiciary Law, §§ 431-432) and does not extend ,to those delivered by a Judge to an unofficial publishing company as to which defamatory statements contained therein are only qualifiedly privileged (Murray v. Brancato, 290 N. Y. 52). In such posture the omission of a constitutional or statutory provision relating to lower ranking executive officials may properly be viewed as a tacit rejection by the draftsmen of the Constitution and by our State legislators of the theory that “ general considerations of public policy ” compel the adoption of the absolute immunity rule. From early times the courts have consistently rejected such a policy. In Hemmens v. Nelson (138 N. Y. 517), the head of a New York State School for the Deaf was *116 sued for defamation. It was there argued that, as an executive official of the 'State, he was entitled to an absolute immunity. We rejected such contention and ruled that only a qualified privilege existed, which would be defeated upon a showing of malice. Though we included in Cheatum v. Wehle (5 N Y 2d 585, 592-593) a brief discussion of the concept of absolute executive immunity, our holding nonetheless was that Wehle, then New York'State Conservation Commissioner, could claim no executive privilege whatsoever because his statements contained in an after-dinner speech were not made in the “ due course ” of his official duties. Certainly, the fact that this court has never granted an absolute privilege to an executive on the municipal level does not prevent us from so doing at this time but it does not follow that we should. It has been said that both high ranking and low ranking executive officials should be granted an absolute immunity,so that they are “ free to exercise their duties unembarrassed by the fear of damage suits in respect of acts done in the course of those duties—suits which would consume time and energies which would otherwise be devoted to governmental service and the threat of which might appreciably inhibit the fearless, vigorous, and effective administration of policies of government.” (Barr v. Matteo, 360 U. S. 564, 571.) In that case, which is relied on by a majority of this court, -the court was concerning itself with the immunity of Federal Government officials and decided that such officials had an absolute immunity from liability for defamatory statements made in the course of their official duties. However, it does not follow that the courts of this State are bound to follow such policy in determining what—if any—immunity is to be afforded an official of a municipal subdivision of the State of New York. We do not subscribe to the notion that a denial of absolute immunity from libel liability will “ dampen the ardor of all but the most resolute, or the most irresponsible, in the unflinching discharge of their duties.” (Cf. Gregoire v. Biddle, 177 F. 2d 579, 581.) Our experience has been to the contrary. Officials of whatever rank and grade need have no fear of incurring liability for acts based on truth. Indeed, our public servants are more likely to ibe responsive to the wishes of the public if they are required to account for their malicious falsehoods. As one writer has perceptively observed, , When an official has taken advantage of *117 Ms position to appeal to public opinion on a disputed matter, it appears that the public need for accurate information will be furthered by permitting a judicial determination of the presence of malice and the truth of the statement. ” (Comment, The Supreme Court, 1958 Term, 73 Harv. L. Rev. 84, 240 [1959]; and see, generally, Handler and Klein, The Defense of Privilege in Defamation Suits against Government Executive Officials, 74 Harv. L. Rev. 44 [1960] ; Jaffe, Suits against Governments and Officers: Sovereign Immunity, 77 Harv. L. Rev. [1963]; Suits against Governments and Officers: Damage Actions, 77 Harv. L. Rev. 209 [1963]; Veeder, Absolute Immunity in Defamation: Legislative and Executive Proceedings, 10 Col. L. Rev. 131 [1910], and Davis, Administrative Officers’ Tort Liability, 55 Mich.L. Rev. 201 [1956].)
As an executive officer, defendant herein had a qualified privilege to make defamatory statements about the plaintiff herein (Hemmens v. Nelson, supra) and, as a citizen, defendant had a qualified privilege to make fair comment about the plaintiff who was occupying a public position (Toomey v. Farley, 2 N Y 2d 71; Hall v. Binghamton Press Co., 296 N. Y. 714; New York Times Co. v. Sullivan, 376 U. S. 254). But as we know, malice destroys a qualified privilege (Andrews v. Gardiner, 224 N. Y. 440, 446). This case comes to us in a different posture than Shapiro v. Health Ins. Plan of Greater N. Y. (7 N Y 2d 56) where plaintiff failed to present in his complaint or affidavits any evidentiary facts from which a jury could infer malice.
In this complaint and its supporting affidavits, sufficient evidentiary facts have been presented to raise a question for the jury as to whether defendant acted with malice in transmitting to the Mayor a commentary containing the statements complained of; for instance, it appears that, at a meeting with defendant some four months prior to the publication of the defamatory letter, the defendant demanded that plaintiff admit that he had made two appraisals of a particular piece of realty and, when plaintiff refused to do so, defendant became angry and threatened, “ You will be hurt if you don’t cooperate. ” It is also averred that defendant began his investigation of the condemnation proceedings in connection with a political feud with the incumbent of the office of Corporation Counsel and that plaintiff was “ used as the patsy in the business.” That defendant *118 and the Corporation Counsel were in fact feuding may be inferred from defendant’s letter itself which refers to the Corporation Counsel’s office in the following manner: “It is incredible that a law office employing 300 or more lawyers could be guilty of such gross negligence as the facts in this case clearly demonstrate. ” Also indicative of defendant’s malice is the assertion by plaintiff that defendant’s false statements about plaintiff were recklessly made and that defendant, through the exercise of reasonable diligence, could have ascertained that the statements he uttered were untrue. Defendant’s own admission in his report that his report ‘ ‘ does not represent an exhaustive and complete investigation of the Edgemere Park matter and does not even attempt an overall study of condemnation procedures and practices ” gives support to the inference that defendant acted recklessly and maliciously, at least a jury might so conclude.
The order of the Appellate Division should be affirmed, with costs. The first certified question should be answered in the affirmative and the last two certified questions should be answered in the negative.
Opinion by Judge Scileppi in which Chief Judge Desmond and Judges Fuld and Bergan concur; Judge Van Voorhis concurs in the result in the following memorandum: I agree with Judge Dye that qualified privilege rather than absolute privilege is the rule to be applied, but consider that the record discloses an absence of evidence of actual malice upon the part of the defendant. Therefore, I vote to dismiss the complaint. Judge Dye dissents and votes to affirm in a separate opinion; Judge Btjbke taking no part.
Order reversed, with costs in this court and in the Appellate Division, and the matter remitted for further proceedings in accordance with the opinion herein. First question certified answered in the negative; second and third questions certified answered in the affirmative.