[No. 4658.]

The Denver Public Warehouse Company et al. v.
Holloway.

1. **Libel—Privileged Communication—Corporations—Employees.**

Where certain property of a corporation was stolen, a letter written by one officer of the corporation to another directing the discharge of an employee of the corporation who was in custody of the property and intimating that such employee had stolen the property, was a privileged communication, and the privilege was not lost by reason of the officer who received it showing it to another employee in explanation of why the suspected employee was discharged.

2. **Libel—Privileged Communication—Burden of Proof.**

In an action for libel when the occasion of the writing or publication is shown to have been privileged, the burden of showing that the defendant has lost his privilege is cast upon the plaintiff.

3. **Libel—Privileged Communication—Presumptions.**

In an action for libel where the writing is shown to have been written on a privileged occasion the presumption attaches to it that it was written in good faith and upon probable cause.

4. **Libel—Privileged Communication—Malice—Burden of Proof.**

In an action for libel where the occasion of the writing is shown to have been privileged the burden of showing malice is cast upon the plaintiff.

5. **Libel—Privileged Communication—Corporations—Employees.**

Where one officer of a corporation wrote a letter to another officer of the corporation upon the subject of the conduct of one of the employees of the corporation, and the letter was written in good faith in the belief that the statements contained were true, the corporation and its officers were not liable in an action for libel by such employee.

*Appeal. from the District Court of the City and County of Denver:*
*Hon. Frank T. Johnson, Judge.*

Mr. T. H. Hood, for appellants.

Mr. Horace G. Benson and Mr. D. C. Webber, for appellee.

Mr. Justice Steele delivered the opinion of the court.

Judson H. Holloway brought his action in the district court of the second judicial district against The Denver Public Warehouse Company, John L. Jerome and D. R. Benedict, based upon the following letter:

"Denver, Colo., Dec. 4, 1901.
"Mr. D. R. Benedict, Manager,
"Denver Public Warehouse Co., City.
"Dear Sir:
"I have given a good deal of thought to the report you made yesterday of the disappearance of forty-one bags of sugar on consignment to the warehouse. I am not satisfied with the statement that no explanation can be given for this loss. Your foreman is on duty through business hours. It would be impossible for the forty-one bags of sugar to disappear without his knowledge. When merchandise of this sort is put in his charge we have got to depend upon finding the goods there or receipts for same. I don't consider that it was possible for this sugar to have been taken out of the warehouse during the night.

"Please discharge Mr. Holloway immediately from his position as foreman and tell him that it is my intention to prosecute him for the theft of the sugar unless he can give some reasonable explanation.

"Yours truly,
"John L. Jerome."

The amended complaint alleges that The Denver Public Warehouse Company is a corporation; that at the time of the sending of the letter John L. Jerome was the treasurer and D. R. Benedict was the manager of the business of the said company. It is further alleged that the defendants, for the purpose of impeaching plaintiff's good name and sub-

jecting him to disgrace and to bring him into disrepute among his neighbors and acquaintances, did falsely, wickedly and maliciously write and publish the aforesaid letter; that the said defendants did maliciously and willfully publish said letter and the contents thereof by reading the same to various people and permitting other persons to read the same, for the purpose of injuring this plaintiff in his reputation. Plaintiff therefore prays for damages in the sum of $10,000. A demurrer to this amended complaint upon the ground that it did not state facts sufficient to constitute a cause of action was filed and the demurrer was overruled. In the answer the defendants admit writing and sending the letter as alleged in the complaint, and alleged that it was written by said Jerome to said Benedict in the course of their said employment by and for the warehouse company; that said defendant John L. Jerome, in good faith and without ill-will or evil intention of any sort toward the plaintiff, and in no other manner whatsoever, on December 4, 1901, wrote and sent to said defendant D. R. Benedict the said letter, believing the statements therein to be true; and that said D. R. Benedict, in good faith and without ill-will or evil intention of any sort toward the plaintiff, and in no other manner whatsoever, received and submitted to plaintiff said letter in regard to the discharge of said plaintiff from his position as foreman.

The replication denies the matters set forth in the answer. The trial resulted in a verdict in favor of the plaintiff and against the defendants jointly for the sum of $5,000, from which judgment the defendants have appealed.

We shall not undertake to consider all of the assignments of error, for the reason that we are of opinion that the court in his instructions to the jury

has committed error which requires the reversal of the judgment.

Instruction No. 3 given by the court is as follows: "The court instructs the jury that the suspicion or belief in the mind of the publisher that the article published is true constitutes no justification of the charge. The publisher, in order to justify, must not only prove that there was such belief and suspicion, but he must prove that the identical charge made was true. It is the policy of the law to protect the innocent from reports that may be spread over the world by means of writing contaminating, vile and malignant falsehoods which may make an impression which would take much time and trouble to erase and which it might be difficult, if not impossible, ever completely to remove."

Instruction No. 4: "The court instructs the jury that where a false article is libelous upon its face the law implies malice, and evidence of malice is not required outside of the publication; and in this case, if the publication is false, the plaintiff is not bound to offer other evidence than that of the publication in proof of malice; for in such case the law implies malice in the author and publisher, and each subsequent publisher, whether in fact malice existed or not."

Instruction No. 12: "The court instructs the jury that a publication the obvious tendency of which, taken as a whole, is to fasten suspicion of guilt of a felony upon the plaintiff, is actionable, although the publication contains no direct charge; and in this case, if the jury believe from the evidence that the testimony of this letter in question, taken as a whole, is to falsely and maliciously fasten the suspicion of guilt of a felony upon the plaintiff, even though you may believe that it contains no such direct charge, your verdict will be for the plaintiff,

unless defendants shall have proved 'by a preponderance of the evidence that the charge made is true, or that the publications of the letter were each privileged publications and without malice in fact.''

Instruction No. 20: ''The jury are instructed that the stockholders, officers and directors of a corporation have the right or privilege to communicate to each other or to the corporation of which they are members whatever they know or have reason to believe and do in fact believe in respect to the management of the corporation or the conduct of any one of its employees or servants. These are what in law are called 'privileged communications.' And when words are thus spoken or written in such privileged communications the party concerning whom they are spoken or written cannot recover for such words so spoken or written unless he shows that said communications were made with malice or without probable cause toward him, or unless the same are published to some third person other than such officers and directors.''

It appears to us that the court has proceeded upon a wrong theory and has excluded from the consideration of the jury the question of the right of the officers of this corporation to communicate with each other upon the subject of the conduct of one of the employees. In *Wagner v. Scott*, 164 Mo. 289, the court, quoting from Newell on Slander and Libel, says '' 'A privileged communication is an exception to the rule that every defamatory publication implies *malice*. A qualified privilege is extended to a communication made in good faith upon any subject-matter in which the party communicating has an interest, or in reference to which he has a duty either legal, moral or social, if made to a person having a corresponding interest or duty, and the burden of proving the existence of malice is cast upon

the person claiming to have been defamed.   *   *   *
The theory of privilege in connection with the law
of defamation involves a variety of conditions of
some nicety, and also a doctrine not always of easy
application to a set of facts, and such being the case
in any trial, whether civil or criminal, while the
questions of libel or no libel, malice or no malice are
matters of fact for the jury, the question of privi-
lege or no privilege is entirely one of law for the
judge.   That is to say, it is exclusively for the judge
to determine whether the occasion on which the al-
leged defamatory statement was made was such as
to render the communication a privileged one.   The
jury, however, will be the proper tribunal to deter-
mine the question of express malice where evidence
of ill-will is forthcoming; but if, taken in connection
with admitted facts, the words complained of are
such as must have been used honestly and in good
faith by the defendant, the judge may withdraw the
cause from a jury and direct a verdict for the de-
fendant.' "

And, in quoting from *Gassett v. Gilbert,* 6 Gray
97, further says: " 'The question whether in a par-
ticular case a publication is to be deemed privileged,
that is, whether the situation of the party making
it and the circumstances attending it were such as to
rebut the legal inference of malice, is a question of
law to be determined by the court in the first
instance.'   But [the court proceeds] in deciding
this question, the conditions on which it is held
to be privileged must necessarily be assumed; that
is, it must be taken for granted that the publication
was believed, by the party who made it, to be true,
and that it was made *bona fide;* because, if these
elements are found to be wanting, then the jury
would be authorized to infer malice.   The sole duty
of the court therefore in such cases is to determine

whether the occasion, in the absence of actual malice, would justify the publication. If so, then it is incumbent on the plaintiff to prove the existence of malice in order to sustain his action; and this must be shown to the satisfaction of the jury, whose exclusive province it is to pass upon the question. But it is not necessary to prove it by extrinsic evidence. It may be inferred from the relation of the parties, the circumstances attending the publication, and even from the terms of the publication itself. The defendants cannot be justified if they have included in their notice any statements or language of a defamatory nature not warranted by the occasion which called forth the publication. The privilege must be limited to the exigency; and if the defendants, by the terms of the notice published by them, exceeded the just limits which were necessary and proper to accomplish the legitimate purpose of protecting the corporation and the public from the unauthorized acts of the plaintiff, it will be evidence of malice proper to be weighed by the jury. So, too, the question of good faith on the part of the defendants, and their honest belief in the truth of the statements put forth by them, are matters of fact which are to be determined exclusively by the jury. Although it is not necessary for the defendants to prove the truth of the statements contained in the notice in order to justify the publication, yet proof of their falsity is admissible on the part of the plaintiff to show that the defendants did not act on an honest belief in their truth."

In the case of *Klinck v. Colby et al.*, 46 N. Y. 427, Mr. Justice Folger, in delivering the opinion of the court, said: "But when the paper published is a privileged communication, an additional burden of proof is put upon the plaintiff, and he must show the existence of express malice in the publication of

it. Hence, as a general proposition, it may be said that the question of whether a publication is a privileged communication is one for the jury. That is to say, the court may determine whether the subject-matter to which the alleged libel relates, the interest in it of the defendant or his relations to it, are such as to furnish the excuse. But the question of good faith, belief in the truth of the statement, and the existence of actual malice, remains; although the court should hold that *prima facie* the communication was privileged.''

And at page 433, the court defines privileged communication in these words: ''The proper meaning of a privileged communication is said to be this, that the occasion on which it was made rebuts the inference arising *prima facie* from a statement prejudicial to the character of the plaintiff, and puts it upon him to prove that there was malice in fact, and that the defendant was actuated by motives of personal spite or ill-will, independent of the circumstances in which the communication was made.''

It seems to us that this communication was privileged. That is, that the occasion which called for the letter and the subject-matter of the letter made it a privileged communication.

In 139 Pa. St. 334 it is held that: ''The general rule is that nothing but proof of its truth is a defense of a libel. That it was privileged, because published on a proper occasion, from a proper motive, and upon probable cause, is the excepted case, and he who relies on an exception must prove all the facts necessary to bring himself within it.   *   *   *   So, where the alleged libel charges an indictable offense, the presumption of innocence ought and must stand as *prima facie* evidence of falsity and want of probable cause, and therefore of malice, even in cases of a claim of privilege.''

But this case does not have the support of the weight of authority. It seems to us that when the occasion is shown to have been privileged the burden of showing that the defendant has lost his privilege is cast upon the plaintiff. The presumption which attaches to a writing written on a privileged occasion is that it was written in good faith and upon probable cause. As said by Justice O'Brien in *Hemmens v. Nelson*, 138 N. Y. 524: "The question is not whether the charge is true or false, nor whether the defendant had sufficient cause to believe that the plaintiff sent the letter, or acted hastily, or in a mistake, but the question is, the occasion being privileged, whether there is evidence for the jury that he knew or believed it to be false. The plaintiff (defendant) may have arrived at conclusions without sufficient evidence, but the privilege protects him from liability on that ground until the plaintiff has overcome the presumption of good faith by proof of a malicious purpose to defame her character, under cover of the privilege."

"This kind of malice," says Justice O'Brien in the case cited, "which overcomes and destroys the privilege, is of course quite distinct from that which the law, in the first instance, imputes with respect to every defamatory charge, irrespective of motive. It has been defined to be an 'indirect and wicked motive which induces the defendant to defame the plaintiff.'—Odgers on Libel and Slander 267."

The authorities other than those cited herein holding that when the occasion is privileged the burden is cast upon the plaintiff to show malice are *Noonan v. Orton*, 32 Wis. 106; *McDavitt v. Boyer*, 169 Ill. 475, citing 2 Greenleaf on Evidence (15th ed.), § 418; *Bradley v. Heath*, 12 Pick. 163; *Beeler v. Jackson*, 64 Md. 589; *Livingston v. Bradford*, 115

Mich. 140; *Strode v. Clement,* 90 Va. 553; *Bacon v. Mich. Cent. R. R.,* 66 Mich. 166, and cases cited.

The case *Republican Publishing Co. v. Conroy,* 5 Colo. App. 262, is cited as supporting appellee's contention that the burden is upon the defendant to prove not only that the occasion was privileged, but that the matter was privileged. The defendant in that case defended upon the grounds that the article was true, that it was published in good faith believing it to be true, and that it was privileged. The court held that, as the article was not published in the discharge of any duty owed by the defendant to itself or others, it was not privileged. The court in the course of the opinion said that if the writer had contented himself with giving the fact of the arrest and the charge upon which it was made, the claim of privilege would be entitled to consideration. The plaintiff had been arrested upon a serious charge; the writer had not only published the fact of the arrest and the nature of the charge, "but he proceeded upon his own responsibility to brand the plaintiff with an opprobious epithet, and to assert him guilty of the most disgraceful and infamous of offenses." This decision is undoubtedly correct. The privilege accorded the publisher of legal or judicial proceedings is that of publishing an accurate and impartial report, and unless it appears that the report is impartial and accurate, the publisher cannot claim immunity upon the ground of privilege; the very essence of the privilege being that the report is impartial and accurate. Not so with respect to communications between persons having a common interest in the subject-matter of the communication, as when the officers of a corporation communicate with each other upon the subject of the conduct of one of the officers or servants of the corporation. Then it is that the occasion determines the question

of privilege. Then language which would otherwise be *prima facie* actionable is not *prima facie* actionable, because the *occasion* repels the inference of malice, and the plaintiff is called upon to show that malice in fact existed; which malice may be shown by extrinsic facts—an antecedent grudge or previous dispute—and the jury should determine from all the facts and circumstances, as well as from the communication itself, whether in writing the communication the defendants were inspired by a malicious intent to defame the plaintiff. But if the defendants wrote the communication in good faith, in the belief that the statements therein contained were true, then they cannot be held liable.

It is quite clear that instruction No. 3, in which the court charged the jury that suspicion or belief in the mind of the publisher that the article published is true constitutes no justification of the charge, and that the publisher must not only prove that there was such a belief and suspicion, but must prove that the identical charge is true, is positively wrong. Under this instruction one would be liable if he truthfully charged another with the commission of an offense, unless he proved that he believed the charge to be true. The instruction is also erroneous in that it is in direct conflict with No. 12, which directs an acquittal if the charges made are proven to be true, and also in that it instructs the jury that belief in the mind of the publisher that the charge is true is no justification. Authorities we have cited hold to the contrary.

In the fourth instruction the court charged the jury that where a false article is libelous upon its face the law implies malice, and evidence of malice is not required outside of the publication, and that the plaintiff is not bound to offer other evidence than that of the publication in proof of malice, "for in such

case the law implies malice in the author and publisher, whether in fact malice existed or not.'' This is not a correct statement of the law as applicable to this case. The occasion was privileged, the subject-matter was privileged, and the law presumes that Jerome in writing the letter was not guilty of malice.

Instruction No. 12 casts upon the defendant the burden of showing that the communication was privileged and that no malice in fact existed. The law is that it is for the court to determine whether the occasion is or is not privileged; and if the communication was written on a privileged occasion, that the burden of showing malice is then cast upon the plaintiff. In cases where there is a dispute as to the occasion upon which the communication was written it is for the jury to find the fact, but in this case it is conceded that the occasion was privileged. The court therefore should not have required the defendant to prove that the communication was privileged and that it was written without malice in fact.

There was testimony that this letter was shown by Benedict to the night watchman, and instruction No. 20 is equivalent to a direction to return a verdict for the plaintiff if the jury believed that the letter was shown or its contents disclosed by the defendant Benedict to one of the employees of the company. The privilege was not lost by reason of Benedict's showing the letter to an employee. The employee was interested, and Benedict had a right to tell why Holloway was discharged. If the officers of the corporation publishing the letter exceed the just limits which are necessary to accomplish the legitimate purpose of protecting the corporation and the employees, such fact may go to the jury as evidence of malice, but the privilege is not lost unless malice in fact ex-

isted.—*Wagner v. Scott,* 164 Mo. 289.; *Bacon v. Mich. Cent. R. R. Co.,* 66 Mich. 166.

In the latter case an employee was discharged upon the alleged ground of larceny. The corporation posted in a conspicuous place a list of names including plaintiff's, and opposite his name, in a column wherein the causes for discharge were to be placed, the word "Stealing" was written. In the opinion it is said: "But it is said that it was not necessary to state the cause of the discharge; that the communication was from a superior to a subordinate, and would have been sufficient to state the fact of the discharge, without stigmatizing the plaintiff as a thief. This objection goes to the character of the language used, and not to the occasion. The occasion determines the question of privilege. The language is only proper to be considered in connection with the question of malice."

We are of the opinion that the jury was not properly directed by the court, and for the reasons given the judgment is reversed.     *Reversed.*

Chief Justice Gabbert and Mr. Justice Campbell concur.