[No. 5741.]

MELCHER ET AL. v. BEELER ET AL.

1.    Appeals—Objections Not Taken Below—An objection to the form of the verdict, e. g., an assessment of single damages upon separate counts, will not be considered on appeal.—(236)

2.    Libel — Privileged Communications — Where inquiry is made as to the responsibility or integrity of another, it is the

duty of the party addressed to respond; his response, though defamatory, if made in good faith, and without malice, does not ground an action; otherwise, if he knowingly makes false charges.—(240, 241)

3. ——Burden of Proof—The burden of establishing facts which render actionable a communication which is prima facie privileged, is upon the plaintiff.—(242)

4. ——Question for Court or Jury—Where the testimony as to the matter is not conflicting the question whether the communication is privileged or not is for the court; otherwise, if the parties are at issue on the subject.—(242)

And the question as to the defendant's good faith, his belief in the truth of his statements, and as to whether he was animated by malice are likewise for the jury.—(242)

5. ——Malice, is not to be inferred from the mere falsity of the publication.—(242)

6. ——Other Publications—Prior and contemporaneous publications are admissible to show malice in the publication counted upon; and this is so, even as to privileged communications, if there be other evidence of malice.—(243)

But the jury should not be permitted to award damages in respect of such other publications.—(238, 239)

7. ——Damages—As to words libelous per se, and not privileged, the law presumes damages, even though the person libeled did not reside where the libel was published, and no evidence of special damage is required. It is for the jury to determine what compensation shall be awarded.—(244)

8. ——Of Partnership—Partners may maintain an action for a libel which tends to the injury of the partnership, even though only one of the parties is named in the defamatory publication, and the libeler was not aware that the other partner was connected with the firm.—(245, 246)

9. ——Procured by the Plaintiff—A defamatory publication invited or procured by the person defamed will not support an action.—(247)

10. Instructions—General Exception—The rule that a general exception to an instruction containing distinct propositions of law will not suffice, does not apply where the instruction authorizes the wrong application of a sound proposition.—(239)

11. ——Duty to Request—Where the court has given an erroneous instruction, the party aggrieved is not required to tender a correct one, in order to avail himself of the error.—240)

12. Rehearing—What Questions Will Be Considered—The court will not, upon a petition for rehearing entertain a question

not presented below, nor upon the original argument in this court.—(248)

13. **Evidence—Admitted for a Special Purpose**—Where evidence competent for only one purpose is received, good practice requires that the court should, at the time, so advise the jury. —(237)

14. **Statutes Construed**—The statute requiring those doing business as a company, or under the name of manager, or the like, to file with the county recorder a sworn statement of the names of those represented, and providing that those failing shall not prosecute any suits, "for the collection of their guests" (Laws 1897, c. 65; 3 Mills' Stats., Rev. Supp., § 3387a; Rev. Stats., § 4778), has no application to an action for a libel.— (245)

*Appeal from Denver District Court* — Hon. FRANK T. JOHNSON, Judge.

Messrs. STOKES & SHERMAN, for appellant.

Mr. JOHN W. HELBIG, and Mr. R. D. REES, for appellee.

Mr. JUSTICE GABBERT delivered the opinion of the court:

Appellees, as plaintiffs, brought an action against the appellants, as defendants, to recover damages resulting from alleged libelous letters and publications which, it was charged, the defendants had composed and published of and concerning them. The complaint contained three counts. The first was withdrawn from the consideration of the jury. On the remaining two a verdict was returned, in the sum of one thousand dollars, in favor of the plaintiffs, on which judgment was subsequently entered. From this judgment the defendants have appealed.

The verdict of the jury was to the effect that they found the issues for plaintiffs on the second and third causes of action, and assessed their damages in the sum of one thousand dollars. On behalf of the defendants it is claimed this verdict is erroneous, for

the reason that it does not appear what amount was assessed in the way of damages upon each of the two causes separately. In support of this contention it is urged that as the jury failed to designate separately the damages assessed upon each cause of action, it is impossible to tell whether or not the damages returned were determined by the unanimous verdict of the jurors. Whether or not there is any merit in this contention, is not properly here for our consideration. No such objection or exception was taken to the verdict of the jury at the time it was rendered, neither was the question now presented raised in the trial court by a motion for a new trial. The general rule applicable is, that a question not presented for the determination of the trial court will not be considered for the first time on appeal. If counsel for defendants were dissatisfied with the verdict for the reasons which they now assign, they should have called the attention of the trial court to its alleged defects by the objection which they now urge upon our attention. When counsel neglect to point out alleged errors occurring at the trial in such time and manner as will afford the trial court an opportunity for their correction, they will not, as a general rule, be heard to complain of such errors in a court of review.—*D. & R. G. v. Ryan,* 17 Colo. 98.

Plaintiffs were copartners doing business under the firm name and style of The Colorado-Texas Commission Company, and were engaged in carrying on a general commission business in the city of Denver, and in buying and selling and otherwise disposing of, consignments of produce, as wholesale commission merchants. At the trial the plaintiffs offered, and the court admitted in evidence over the objections of the defendant, two letters reflecting upon the business integrity of the plaintiffs, which were not counted upon in the complaint as constituting libels

for which damages were claimed. Prior and contemporaneous publications of similar import to those for which damages are claimed in an action for libel are competent to show malice; hence, in the case at bar, the letters objected to were competent for that purpose and the general objection to their admission was properly overruled. They were admitted, however, without any caution to the jury to the effect that they could only be considered on the question of malice. Counsel for the defendants at the time the letters were introduced made no request for a cautionary instruction limiting the purpose for which the letters were competent; but, notwithstanding this omission upon their part, we think the better practice is that when testimony is competent only for some particular purpose, that the court should so advise the jury, at the time of its introduction; but by this suggestion we must not be understood as holding that it is error for the court not to do so when counsel objecting to its reception failed to make a request of the court to advise the jury for what purpose it is competent. We notice the omission in this instance for the purpose of bringing out more clearly the error which the court committed in giving instruction No. 14. This instruction was to the effect that when language is used concerning merchants which, from its nature, will, as its natural and proximate consequence, occasion them a pecuniary loss, its publication constitutes *prima facie* a cause of action for which general damages may be recovered without any evidence of damage other than that which is implied from the fact of publication. The instruction then proceeds as follows: "The law does not restrict you to any calculation of damages done in the way of dollars and cents, or to a calculation of damages on a pecuniary basis, but you are at liberty in determining this question, to award

the plaintiffs, if entitled to recover herein, such damages as in the exercise of your reasonable judgment, *under all the evidence in the case,* you may think the plaintiffs should have by way of compensation for the injuries done to them in their capacity as merchants or traders, not exceeding, however, the amount demanded in the respective counts of the complaint herein.''

It will be observed that the instruction fails to caution the jury not to increase the damages on account of the letters to which objections were interposed, and advised that such damages may be assessed as, in their judgment, from *all* the evidence, the plaintiffs should have for the injury suffered by them in their capacity as merchants and traders. For the purpose of showing malice, the letters under consideration were competent, but no damages for their publication could be awarded, because none were claimed on that account. ·They were only proper to consider in determining whether or not the letters which were charged to be libelous and declared upon in the complaint, were actuated by malice of the defendants towards the plaintiffs, but not in aggravation of damages.—*Beardsley v. Bridgman,* 17 Iowa 290. No such caution was given the jury; and when they were told that language concerning merchants and traders calculated to occasion them a pecuniary loss as the result of its publication constitutes a cause of action for which general damages may be recovered, followed with the further statement to the effect that in awarding damages they were at liberty to award such sum as in their judgment from *all the evidence* in the case they might think the plaintiffs should have by way of compensation for the injury done to them in their capacity as merchants and traders, it is evident that they could consider ьhe letters for which no damages were

claimed as causing injury which they could take into consideration in estimating the sum which should be awarded the plaintiffs. In other words, under this instruction, in the absence of any caution to the jury at the time the letters were received directing their attention to the fact that they could only be considered for the purpose of determining whether or not the defendants were actuated by malice in publishing the letters declared upon, or any instruction limiting their effect to this one question, the jury, in estimating damages, were at liberty to take into consideration all four of the letters instead of limiting them to those set up in the complaint. This was erroneous, for the simple reason that it is error to so instruct a jury as to permit them to consider matters in estimating damages which cannot be considered for that purpose.—*Letton v. Young,* 2 Metc. (Ky.) 558; *Taylor v. Moran,* 4 Metc. (Ky.) 127.

On behalf of the plaintiffs it is urged that as the instruction correctly stated what would constitute a libel against merchants, and also stated correctly that damages for such libel are not restricted to a calculation of damages on a pecuniary basis, that a general exception thereto was not good because it did not designate what was incorrect by separating it from that which was correct. The rule that when an instruction embraces several distinct propositions of law, some of which are correct, a general exception to the whole instruction is not good, does not apply where the instruction authorizes the wrong application of that which is correct. In the case at bar, conceding that the portions thereof referred to by counsel for plaintiffs are correct, it authorizes the jury, in estimating damages, to consider letters which could not be considered for that purpose.

It is further urged by counsel for plaintiffs that inasmuch as the court, by previous instructions,

stated in substance that the second and third causes of action were based upon the letters described therein, the jury understood that they were limited in estimating damages to these letters. The suggestion is not tenable. By one instruction the jury were told that the plaintiffs seek to recover upon certain letters; by the other, all letters could be taken into consideration in estimating damages.

It is also urged by counsel for plaintiffs that if defendants desired an instruction to the effect that the letters which were only competent for the purpose of establishing malice could not be considered as substantive grounds for damages, it was the duty of their counsel to have tendered a correct instruction on that point. In the circumstances of this case that proposition is clearly untenable, for the obvious reason that it would impose upon counsel, where the court had given an erroneous instruction, the burden of tendering a correct one; otherwise, they would be precluded from assigning error on the one which was incorrect.

It is next urged that the court erred in not directing a verdict for the defendants on the causes of action upon which the verdict was based. In support of this contention it is claimed that the letters sued on were privileged communications; and for this reason the case should not have been submitted to the jury, as it was the duty of the court, and not of the jury, to decide whether the communications were privileged or not. The letters complained of were written by the defendants in response to inquiries received from parties asking for information regarding the responsibility and standing of The Colorado-Texas Commission Company. The response to these inquiries reflected upon the honesty and business integrity of that partnership.

Every one owes it as a duty to his fellowmen to

state what he knows about a person, when inquiry is made; otherwise, whether or not men were honest could not be ascertained except by experience. But for such inquiries, it would often occur that parties about to enter into business relations with others would be unable to ascertain in advance their character with respect to integrity or capability. The interest. of society demands and requires that inquiries may be made respecting such matters, and that answers thereto may be given without subjecting the party answering such inquiries to an action for libel or slander, for the opinion furnished in response to such inquiries; hence, where a party to whom an inquiry is addressed regarding another communicates *bona fide* without malice to the person making inquiry facts regarding the person inquired about, it is a privileged communication; and so it follows that a party is justified in giving his opinion in good faith of the integrity and standing of a tradesman in answer to an inquiry concerning him. —Townsend on Slander and Libel, § 241-a; *Rude v. Nass,* 24 Am. St. Rep. 717, 79 Wis. 321; *Denver P. W. Co. v. Holloway,* 34 Colo. 432; *Harrison v. Bush,* 5 Ellis & Blackburn 344.

As was said, in substance, in the case last cited, a communication made *bona fide* upon any subject-matter in which the party communicating has an interest, or in reference to which he has a duty, is privileged, if made to a person having a corresponding interest or duty, although it contains incriminatory matter, which, without this privilege, would be slanderous and actionable; and this, though the duty be not a legal one, but only a moral or social duty of imperfect application. But the person to whom such an inquiry is addressed cannot abuse his privilege in answering it. If he knowingly makes a false charge against the person inquired about he cannot claim

(16)

immunity, because, in response to an inquiry it is not his duty to circulate a falsehood.—Odgers on Libel and Slander, p. 198.* If the testimony bearing on the question of whether or not a communication is privileged is not conflicting, the question of its character in this respect would be one of law for the court. On the other hand, if there was an issue on the subject as to whether or not it was privileged, it would be one of fact for the jury to determine under appropriate instructions.—18 Ency. 1050; Townsend on Libel and Slander, §§ 287-288.

But, even though a communication be privileged, the question of good faith, belief in the truth of the statements made, and the existence of actual malice, remain for the jury to determine when, under the issues and testimony, it is in issue, and the burden of establishing the facts which would render a privileged communication actionable rests upon the plaintiff—*Denver P. W. Co. v. Holloway, supra*—but the falsity of the statements of a privileged communication is not sufficient of itself to raise the inference that they were maliciously inspired.—*Fowles v. Bowen*, 30 N. Y. 20; *Ritchie v. Arnold*, 79 Ill. App. 406.

So far as advised from the present record, it appears the letters declared upon were privileged in the sense that they were written in response to what the defendants believed were *bona fide* inquiries regarding the business integrity of the plaintiffs; and if the court submitted to the jury the question of whether or not they were privileged, it was error. What the instructions might disclose on this subject it is not necessary to determine, for the reason that at another trial if the facts presented are substantially the same as now, this error can be avoided. The plaintiffs charged that the letters upon which they base their right to damages were inspired by malice;

that the statements therein were false and injurious; and as there was some testimony tending to prove this charge, it was proper for the court to submit to the jury the question of the good faith of the defendants, their belief in the truth of their statements, and whether or not they were inspired by malice in making them. If these questions were resolved in favor of the defendants from the testimony, then the verdict should be for them, even though it should develop that the statements made were untrue.—*Rude v. Nass, supra.*

In this connection we notice the contention of counsel for the defendants, that the letters referred to in discussing instruction No. 14, and which we said were competent for the purpose of proving malice, were not admissible for that purpose. The reason assigned in support of this contention is, that these letters were also privileged, and, therefore, were not admissible to prove actual malice in writing the letters declared upon. That a party was actuated by malice in making a defamatory communication which is privileged, cannot be established alone by introducing other privileged communications, nor would the latter be admissible for this purpose until there was some other testimony tending to prove the malice of the party making a privileged communication; but where there is some testimony tending to prove actual malice, then other communications, although privileged in their nature, are competent for the purpose of corroborating or establishing it.

There was no evidence that the plaintiffs were known in the community where the letters declared upon were published, and it is therefore, urged by counsel for defendants that plaintiffs were not entitled to recover general damages. It appears to be conceded that these letters contained such reflections upon the honesty and integrity of the plaintiffs that

they were actionable *per se,* unless the letters were privileged. Where the words charged as libelous are actionable *per se,* the law presumes damages. No special evidence concerning them is required. It is for the jury to determine what amount by way of compensation shall be allowed for the injury.—*Republican Publishing Co. v. Conroy,* 5 Col. App. 262; *Republican Publishing Co. v. Mosman,* 15 Colo. 399; 18 Ency. 1082.

By virtue of the provisions of the laws of 1897, p. 248, § 3387a, 3 Mills' Stats., Rev. Supp., § 4778 Rev. Stats., it is made the duty of any person or persons trading or doing business in this state, under the name of manager, or in any other representative name, and any person or persons using as a part of the business name the words "& Company," to file for record with the clerk and recorder of the county in which such business or trading is carried on, an affidavit setting forth the full Christian and surname, and addresses of all the parties who are so represented. Failure to comply with this provision is made a misdemeanor, and persons, partnerships, and associations trading and doing business under the name mentioned on failure to file the affidavit required "shall not be permitted to prosecute any suits for the collection of their debts until such affidavit shall be filed."

At the time of the alleged libels, the plaintiffs had not complied with this statute, although they did comply with its provisions prior to the commencement of their action. On behalf of the defendants, an instruction was requested and refused, which mentioned the statute, and stated that "in default of such affidavit the persons so trading are prohibited from instituting or defending any suit"; and continuing, was to the effect that if it appeared the plaintiffs were carrying on their business at the time

the letters declared upon were written under the name of The Colorado-Texas Commission Company, and no affidavit as required was filed until after such letters were written, the plaintiffs were violating the law, and would not be permitted to complain that the defendants believed plaintiff John F. Beeler was the only person interested in the firm; and further, that if these letters were written by the defendants in good faith, without actual knowledge that the, plaintiff, Mrs. Beeler, was connected with the firm, and the facts set forth in such letters were true, as to the plaintiff, John F. Beeler then the verdict should be for the defendants.

The statute only applies to suits for the collection of debts due the firm doing business to which it applies. It does not apply to suits for torts. The action by plaintiffs is one for tort, and hence, it was not within the statute. For this reason the instruction was erroneous, because it, in effect, advised the jury that the failure to file the affidavit inhibited the plaintiffs from maintaining their action.—*Pedroni v. Eppstein,* 17 Col. App. 424; *Ralph v. Lockwood,* 61 Cal. 155.

Independent of these considerations, the instruction was not the law. Its last paragraph is to the effect that if the letters were written in good faith, without knowledge that Mrs. Beeler was a member of the partnership, doing business under the firm name and style of The Colorado-Texas Commission Company, and that the charges in such letters were true as to John F. Beeler, then the verdict should be for the defendants. The action was by the firm. The libel charged was a libel of the firm, doing business under the name and style mentioned. Libelous letters, although naming but one member of the firm, might result in injury to the partnership, so the mere fact that Mrs. Beeler was not named in either of the.

letters, or the defendants were not aware that she was a member of the partnership, would not justify a verdict in their favor if it appeared that, from the letters written, the partnership was damaged. Partners may maintain a joint action for libel or slander which tends to injure the business of their firm, even though the defamatory words refer to, or concern, but one of its members.—18 Ency. 1055; *Taylor v. Church,* 1 E. D. Smith (N. Y.) 279.

One of the letters declared upon was written to A. E. Finn, at Littleton, in this state. As a separate defense the defendants pleaded that the inquiry received by them from Finn which caused the writing of the letter to him was written at the instigation of the plaintiffs, for the purpose of securing a letter with the premeditated purpose of bringing an action for libel thereon. Finn testified in substance that he was a janitor at the court house at Littleton, where he had been employed for a year and a half previous to the letter written to the defendants; that he was never in the produce business there or elsewhere; that he was not contemplating on that date the shipping of any produce to Denver; that he had been engaged in the hotel business at Littleton, since which time he had been employed as janitor at the court house, with the exception of a period when he tended bar. He further stated that the letter which he addressed to the defendants was written at the request of a party named Sherrer; that he (the witness) dictated the letter which was written by Sherrer; that he wrote the letter to the defendants simply because Sherrer requested it; that he was not acquainted with either the plaintiffs or the defendants; that Sherrer requested him to send the answer to an address in Denver, which he gave him; and that when the answer came, he sent it to Sherrer at the address given.

At the trial Sherrer could not be found, and his evidence could not be obtained. Beeler testified that he received the Finn letter through the mail, but did not know who sent it.

The defendants requested an instruction to the effect that if the plaintiffs procured the writing of the letter complained of with the view of bringing an action thereon, that the defendants are guilty of no wrong against them, and that procuring the letter in such circumstances could not be made the basis of an action. This instruction should have been given. The circumstances under which the letter to the defendants was written and the fact that it was sent to Sherrer, who had requested Finn to write the letter which called forth the response subsequently mailed to plaintiffs are suspicious, to say the least. Finn was not engaged in the produce business. He had no interest whatever in ascertaining what the standing of the plaintiffs might be. He did not contemplate engaging in the produce business, and had never been so engaged. And although there is no direct testimony connecting the plaintiffs with this transaction, the inference that they procured Sherrer to induce Finn to write the letter to the defendants and turn over the answer to them, is very·strong. Who Sherrer was is not disclosed. It does not appear he had any interest to protect, either present or prospective, which would induce him to make any inquiry regarding the plaintiffs. Finn wrote the letter at his suggestion. He requested the answer to be mailed to him, which was done. Plaintiffs obtained it through the mail. Beeler says he did not know who sent it. On this state of facts, unless satisfactorily explained, the jury might have determined that Sherrer was acting for the plaintiffs when he procured Finn to write the letter of inquiry. Alleged defamatory statements invited or procured

by a plaintiff or a person acting for him, will not support an action for libel. In such circumstances the party claiming to have been libeled by a letter in response to a request regarding him, has invited the commission of a wrong, and will not be heard to complain that he was libeled.—18 Ency. 1018; *Howland v. Blake Mfg. Co.,* 156 Mass. 543 (570); *Sutton v. Smith,* 13 Mo. 120.

If the defendants were guilty of no wrong against the plaintiffs with respect to the Finn letter except a wrong invited and procured by them to be committed for the purpose of making it the foundation of an action, it would be unjust to permit them to profit by it. He who thus acts values money more than character.

The judgment of the district court is reversed and the cause remanded for a new trial.

*Reversed and remanded.*

CHIEF JUSTICE STEELE and Mr. JUSTICE WHITE concur in reversal upon the grounds stated, except those stated in discussing instruction No. 14, and as to those, express no opinion.

---

*On Petition for Rehearing.*

Opinion by Mr. JUSTICE GABBERT.

In support of their petition for rehearing, counsel for appellees contend that we have ignored sec. 10 of our Bill of Rights, which provides, in substance, that in suits and prosecutions for libel, the truth thereof may be given in evidence, and that the jury, under the direction of the court, shall determine the law and the facts. This is inconsistent with the position assumed by counsel in their original brief; but aside from this, the question of the applicability

of the section of the Bill of Rights referred to has not been in any wise determined. The question does not appear to have been raised below; it was not urged upon our attention in the original brief; and we have not expressed any opinion whatever on that subject.

The petition for a rehearing is denied.

Rehearing denied July 5, A. D. 1910.