VIRGILIO AYALA RIVERA, Plaintiff and Appellant, *v.* MARYLAND CASUALTY COMPANY ET AL., Defendants and Appellees.

No. 6324. Argued June 8, 1934.—Decided July 26, 1934.

*Isaías M. Crespo* for appellant. *Juan B. Soto* for appellees.

MR. JUSTICE CÓRDOVA DÁVILA delivered the opinion of the Court.

Virgilio Ayala Rivera, plaintiff and appellant in the case at bar, filed suit in the District Court of San Juan against the Maryland Casualty Co. and Peter B. Pulman alleging that he is a minor surgeon and was employed as such by the Central Bocachica; that the Maryland Casualty Co. was the insurer of the workmen of said central and that taking advantage of that position and through the other defendant, Peter B. Pulman, requested and required the Central Bocachica to discharge or remove the plaintiff alleging as grounds that the plaintiff had sutured imperfectly the tendons of a hand of the injured person, Antonio Mercado, whose hand consequently was partially and permanently disabled; that the defendant gave medical attention to certain persons but when an infection set in he sent them to Ponce to be treated there by a physician; that due to the plaintiff's fault there had been an undue expenditure of antitetanic serum, and that they had to pay $743.43 as damages for the incapacity of the aforesaid workman.

The plaintiff further alleges that said statements are false and were the grounds of his dismissal from said employment, and that by reason of that removal and by virtue of the attitude of the defendants, he has suffered damages he estimates in the sum of $14,630, which he claims, with costs.

The complaint was dismissed and as appeal has been taken from the judgment rendered by the lower court, we shall now consider especially the first three errors assigned to the

lower court, since they are the only ones plaintiff argues extensively in his interesting brief and because the others lack importance and it is unnecessary to give them painstaking consideration. It is alleged in the first instance that the lower court erred in holding that the verification in the answer was valid.

Section 118 of the Code of Civil Procedure provides that where a pleading is verified it must be by the affidavit of a party, unless the parties are absent from the district where the attorney resides, or from some cause are unable to verify it, or the facts are within the knowledge, of his attorney, or other person verifying the same. When the pleading is verified by the attorney, or any other person, not one of the parties, he must set forth in the affidavit the reason why it was not verified by one of the parties.

The attorney in the instant case was the person that verified the pleadings and sets forth that he did so because the defendants were absent from the district where the aforesaid attorney resides. It does not appear from the record that the defendant objected to the verification, either before or after the trial in the lower court. The evidence introduced does not warrant the conclusion that the verification was not effected in accordance with the provisions of the law; but even if it were defective, plaintiff would be estopped from raising this question on appeal. In the case of *Rivera* v. *Central Pasto Viejo*, 43 P.R.R. 683, this Court held:

"Where a plaintiff whose motion for judgment on the pleadings has been overruled proceeds to trial and endeavors to establish his rights by means of evidence, he thereby waives the motion and is precluded from raising the question on appeal."

We transcribe the following from California Jurisprudence, volume 21, page 221:

"Objection to the want of verification of a complaint must be taken either before answer or with the answer; and if the defendant answers or the parties proceed to trial without objection, the defect is waived and may not be raised on appeal. Likewise, the

lack of verification of the defendant's answer will be deemed to have been waived if the parties proceed to trial without previous objection upon the part of the plaintiff. Such objection may not be raised after trial on the merits is begun, nor may it be made for the first time on appeal, after such trial.''

The error assigned does not exist.

 In the second instance it is alleged that the lower court erred fundamentally in weighing the evidence. In the opinion of the appellant it was satisfactorily proved that Pulman is an employee of the defendant, Maryland Casualty Co. Inc., and that acting maliciously and on groundless suspicious that the appellant had injured the interests of the Maryland Casualty Co., he directed, ordered and required the Central Bocachica to suspend the aforesaid defendant from office and salary. These groundless suspicions, according to the plaintiff, were originated by Dr. Gelpí acting in the discharge of his duties as an employee and for the purpose of protecting the supposed rights of the defendant, Maryland Casualty Co.

One of the questions at issue in the instant case concerns the appointment of a minor surgeon in the Central Bocachica. According to the law, central owners must keep a medicine chest and must have in their employ during the grinding season a doctor or a minor surgeon who shall remain in the central during the working hours of the day to give first aid in case of injuries occasioned by any unfortunate accidents that may occur. The defendants allege that the appointment of the minor surgeon for the said central is made by the Maryland Casualty Company. The plaintiff seems to maintain that the Central Bocachica itself appoints the minor surgeon. The Maryland Casualty Co. is the insurer of the workmen of said factory to guaranty the payment of the compensation for accidents suffered in the course of their employment.

From the evidence adduced it is inferred that the minor surgeon received a salary of $90 a month, of which $50 were paid by the Maryland Casualty Company and $40 by the

central. The factory's auditor, Mr. Luis Betancourt, testified that he makes the appointments and instructs the appointee as to his duties. According to the witness, the minor surgeon is an employee of the Maryland Casualty Co. Dr. Pulman, who is in charge of the direction and administration of the medical department of the Maryland Casualty Co. in Puerto Rico, testified that the American Casualty Co. appointed the plaintiff, Virgilio Ayala, on the grounds of a satisfactory service. The witness asserts that the insurance company has charge of appointing the minor surgeon.

The evidence introduced shows that the Central Bocachica consented to have the Maryland Casualty Co. appoint a minor surgeon to give medical assistance to the workmen insured by said company who are injured during working hours. The defendant pays half of the salary this employee enjoys. If the Maryland Casualty Co. is the one that appoints said employee, no one can dispute its right to dispense with his services upon the maturity of the terms his services were contracted for. If, as it appears from the evidence, we are dealing with an appointment renewable monthly, the defendant has not violated any contract nor incurred in any responsibility upon seasonably notifying the plaintiff of the date his services would no longer be necessary. It is alleged, none the less, that by virtue of the statements made by the defendant through its agents to the Central Bocachica, the plaintiff has been deprived not only of the position he enjoyed, but has also suffered damages because his reputation has been prejudiced by reason of the charges he has been subjected to.

The auditor of the factory, Mr. Betancourt, testified that Braegger, agent in Puerto Rico of the Maryland Casualty Co., and Dr. Pulman, personally came to his office and gave him verbal orders to remove the minor surgeon from office. These gentlemen told him: "We are here to deal with the problem of the minor surgeon. We are not satisfied with his services and we don't want to use him any further." The

auditor told them that it was too drastic a measure to act at once; that the employee should be notified according to the law, at least one month in advance; and that Dr. Pulman then told him; "All right, to become effective the last day of next month." Mr. Betancourt stated that since his boss was absent he required a reason to adopt that procedure, "because we (meaning the central) had none." Dr. Pulman spoke of certain ill treated cases that cost the company some money, especially one in which they had to pay approximately $800, but neither the witness nor the doctor could remember the name of the person. Dr. Pulman promised to write to Betancourt, which he did on the next day, sending him the following letter:

"July 29, 1931.

"Mr. L. Betancourt, Auditor,
 Central Bocachica, Ponce, P. R.

"Dear Mr. Betancourt:
 "I have informed Dr. Gelpí that you will speak soon with him concerning the matter of the minor surgeon.
 "The name of the workman I referred to yesterday is Antonio Mercado, accident: 'Serious wrist wound, lacerated, February 24, 1931.' Claim closed on July, with a loss of 90% of the hand's movement. The cost of the compensation alone amounts to about $800.

"Respectfully,

"(Signed) Peter B. Pulman."

Betancourt stated that he notified his principal, that is, the administrator of the central, of the verbal instructions he received from Braegger and Dr. Pulman, and that by order of the administrator he transmitted verbally the instructions he had received to Mr. Ayala.

It is quite clear that the Maryland Casualty Co., who insured the workmen against accidents suffered in the discharge of their work, must be interested in securing immediate and efficient medical attendance for the workmen injured, and in the selection of a good staff to protect its interests.

In this respect the interest of the defendant is by far superior to that of the Central Bocachica, who from the point of view of actual liability has nothing to worry about the treatment given to the patient. Defendant can not be deprived of its right to entrust this work to a person that merits its confidence. Under these circumstances the words of the insurance company to the effect that they no longer. wished the services of the plaintiff and its answer to Betancourt's request to state grounds that led them to adopt said attitude, constitute a privileged communication that can not give rise to a right of action in favor of the employee whose services are refused. It is argued that workman Antonio Mercado was not attended by the plaintiff and that defendant corporation made use of erroneous information as grounds to deprive him of the office he discharged. Aside from the fact that it has not been shown that the Maryland Casualty Co., acted in bad faith, the words spoken by Messrs. Braegger and Pulman at the Central Bocachica's request can not have the scope attributed by the plaintiff. Those words were spoken in a private conversation by the representatives of the insurance company in the best interests that the medical treatment received by the patients be satisfactory.

In the case of *Melcher* v. *Beeler,* 110 Pac. 181, the Supreme Court of Colorado held:

"As was said, in substance, in the case last cited, a communication made bona fide upon any subject-matter in which the party communicating has an interest, or in reference to which he has a duty, is privileged, if made to a person having a corresponding interest or duty, although it contains incriminatory matter, which, without this privilege, would be slanderous and actionable; and this, though the duty be not a legal one, but only a moral or social duty of imperfect application. But the person to whom such an inquiry is addressed cannot abuse his privilege in answering it. If he knowingly makes a false charge against the person inquired about, he cannot claim immunity, because, in response to an inquiry, it is not his duty to circulate a falsehood. Odgers on Libel and Slander, p. 198. If the testimony bearing on the question of whether or not

334

a communication is privileged is not conflicting, the question of its character in this respect would be one of law for the court. On the other hand, if there was an issue on the subject as to whether or not it was privileged, it would be one of fact for the jury to determine under appropriate instructions. 18 Ency. 1050; Townsend on Libel and Slander, sections 287, 288. But, even though a communication be privileged, the question of good faith, belief in the truth of the statements made, and the existence of actual malice, remain for the jury to determine when, under the issues and testimony, it is in issue, and the burden of establishing the facts which would render a privileged communication actionable rests upon the plaintiff (*Denver P. W. Co.* v. *Holloway,* supra); but the falsity of the statements of a privileged communication is not sufficient of itself to raise the inference that they were maliciously inspired. *Fowles* v. *Bowen,* 30 N. Y. 20; *Ritchie* v. *Arnold,* 79 Ill. App. 406.''

See also 17 R. C. L. 357 and 359 and 359 C. J. 1246.

In the instant case the interest of the party that gave the information is manifest. This information was given to the person that requested it and who also has some interest in the matter. The insurance company was not obliged to continue making use of the services of the plaintiff. It was then that the defendant answered through its representatives stating the reasons they had, at the request of the central. Dr. Pulman was notified by Dr. Gelpí, also physician of the company, that Antonio Mercado had received medical attendance from Virgilio Ayala. Dr. Gelpí states that he obtained the information from Antonio Mercado, the patient. The latter denies having said so. Other witnesses of the plaintiff, also, state that Antonio Mercado was not attended by Virgilio Ayala. There are no grounds, however, to sustain that Dr. Pulman acted in bad faith. It does not appear from the evidence introduced that he gave the information requested by the Central Bocachica moved by malice or due to any other motive that might tend to prejudice the reputation of the plaintiff. There appears a desire to insure an efficient service and to protect the interests of the insurance company.

The plaintiff also offered in evidence a letter sent to him by Dr. Pulman a representative of the defendant, in answer to another written to him by Virgilio Ayala himself. The letter reads thus:

"August 24, 1931.

"Mr. Virgilio Ayala Rivera, minor surgeon,
 "Central Boca Chica, Ponce, P. R.

"Dear Sir:

"I acknowledge the receipt of your letter of August 7 of the contents of which I have taken due note. I have delayed my answer to the same because I wished to give to Dr. Gelpí the benefit of the information given by you in regard to Antonio Mercado, and it was not possible for me to secure that information from him until now.

"In my mind there existed no doubt that it was necessary to make a change in Bocachica, for there was nothing as evident as the fact that we were using an excessive amount of medicines, especially serums, for treating the persons injured in the central. The cost of the antitetanic serum used only in the Central Bocachica to treat the people injured in the Central was three times larger than the serums used in the Central Coloso, where a much larger number of injured people were treated.

"I am sorry I can not modify my decision since I made it for the sake of economy and in the best interests of the service.

"Very truly yours,

"(Signed) Peter B. Pulman."

We have carefully read the preceding letter, and we are of opinion that the contents of the same do not give rise to a cause of action in favor of the plaintiff. The aforesaid letter was an answer to another one written to Dr. Pulman by plaintiff Virgilio Ayala himself. In the aforecited case of *Melcher* v. *Beeler* the Supreme Court of Colorado held:

"Alleged defamatory statements, invited or procured by a plaintiff or a person acting for him, will not support an action for libel. In such circumstances, the party claiming to have been libeled by a letter in response to a request regarding him, has invited the commission of a wrong, and will not be heard to complain that he was libeled."

The third assignment of error is on the ground that the judge of the lower court, Hon. Carlos Llauger, is the father of Sabino Valdés' wife, who in his turn is the claim manager in Puerto Rico of the defendant Maryland Casualty Co., and immediate superior of codefendant Peter B. Pulman. The plaintiff thinks that, in the purview of Section 23 of the Code of Civil Procedure, which provides that a judge can not act in any judicial action or proceeding in which the judge is related by consanguinity or affinity within the fourth degree to any of the parties, or to the attorney of any of the parties within the second degree. The defendant alleges that the status of Mr. Valdés does not establish any relationship by consanguinity or affinity between it and the judge, and therefore that he was not obliged to inhibit himself. It is possible that the inhibition of the judge is advisable under certain circumstances, as where his relationship to the representative of an entity tnat is a party to the suit is within the degrees provided in the Code of Civil Procedure as grounds for the inhibition; but as strictly speaking there can be no relationship by affinity or consanguinity with a juridical person within the provisions of the law, it can not be said that the judge is obliged to inhibit himself. Furthermore we must bear in mind that the plaintiff never requested the inhibition of Judge Llauger and that this question was brought up for the first time on appeal. It is true that the plaintiff alleges that he was ignorant of the existing relationship between Valdés and the Judge, and if that is true, it is clear that the question could not have been seasonably raised. But it can not be denied that if an objection of such a nature were allowed to be taken for the first time on appeal, the acting party would be placed in an extremely favorable position, because he might take advantage of the decision in case it should be favorable to him or to raise his objection were it adverse. We are of the opinion, none the less, that in the purview of the provisions of the Code of Civil

Procedure, the judge was not obliged to inhibit himself in the case at bar.

The fourth, fifth, sixth, and seventh error concern certain testimony of witnesses Euclides Schmidt and Virgilio Ayala that was stricken out. They lack importance and cannot prevail.

The eighth and ninth errors are on the ground that the court refused to allow witnesses Gelpí and Pulman to answer a certain question. These errors are also unimportant and shall not be considered.

The tenth error shall not be considered. It was alleged that the court erred in seriously considering the testimony of Dr. Gelpí.

The judgment appealed from should be affirmed.