## No. 18,354.

ALFRED C. LING *v.* WILLIE WHITTEMORE.

(343 P. [2d] 1048)

Decided September 14, 1959.

Messrs. GAUNT & BYRNE, Mr. LYSLE R. DIRRIM, for plaintiff in error.

Mr. PHILIP G. COLLINS, Mr. FRANCIS R. SALAZAR, for defendant in error.

*En Banc.*

MR. JUSTICE DOYLE delivered the opinion of the Court.

THE plaintiff in error, who will be herein referred to as Ling, seeks review and reversal of a judgment of the district court entered upon a jury verdict awarding defendant in error, who was plaintiff in the district court and who will be herein referred to as Whittemore, $3,000.00 of which $1,500.00 was actual and $1,500.00 exemplary damages. The claim was in defamation and originally alleged that the defendant had perpetrated the defamation by a writing. This theory was changed at the trial and the case was submitted to the jury on the plaintiff's theory that the defendant had *slandered* him. The controversy arose from the unauthorized taking by Whittemore of a vehicle which was then owned by Ling, and as a result of the efforts of Ling to recover it.

In May, 1954, Whittemore was hired as a salesman by Ling, who was then an automobile dealer in Brighton, Colorado. In connection with this employment, Whittemore purchased an automobile from Ling and paid

$100.00 down and agreed to pay the balance in monthly installments starting on June 18, 1954. The chattel mortgage executed by Whittemore to Ling was assigned by the latter to the General Credit Corporation. Whittemore was discharged on September 23, 1954, and following his discharge the automobile was repossessed by the General Credit Corporation, Whittemore having failed to make the September 18th payment. General Credit then assigned the vehicle back to Ling, who had agreed to repurchase in the event of default. Ling executed a note and chattel mortgage to General Credit in the amount of $1,859.38. On September 28, 1954, General Credit applied for a Certificate of Title and on October 18 assigned this to Ling. On September 30, 1954, after possession of the vehicle had been given to Ling and after his execution of the note and chattel mortgage to General Credit, Whittemore, in company with a Mr. McKinney, went to the defendant's place of business and asked for his license plates. Under the pretext of showing the automobile to McKinney, Whittemore entered it, locked the doors and drove off. Ling immediately followed him and Whittemore drove from Brighton to Henderson and, after he had attached the license plates, drove to Longmont, Colorado, where he remained until October 6 and then returned to his residence near Henderson. The car was repossessed following his return. Ling meanwhile searched the immediate neighborhood in an effort to find the car and while doing so talked to a Mrs. Donna May Bromley, the plaintiff's landlady. In seeking the aid of Mrs. Bromley in locating the car, Ling told her that "He (Whittemore) had taken a car from his lot, had stolen a car from his lot — had stolen his car from his lot." The alleged slander stems from this statement. Ling's contentions are:

1. That the court erred in its refusal to hold that plaintiff was guilty under the undisputed facts of stealing an automobile and in its refusal to rule that the state-

ment of Ling was therefore true and a complete defense to the action.

2. That the court erred in failing to rule that the occasion was conditionally privileged and in its refusal to instruct the jury on conditional and qualified privilege.

3. That the court erred in allowing Whittemore to amend his complaint during the course of the trial to change his theory from libel to slander so as to rely upon a transaction different from that set forth in the pleadings.

The determinative question in the case is whether the facts adduced at the trial establish that the occasion was one of conditional or qualified privilege. *Denver Public Warehouse Co. v. Holloway,* 34 Colo. 432, 83 Pac. 131; *Melcher v. Beeler,* 48 Colo. 233, 110 Pac. 181; *Bereman v. Power Publishing Co.,* 93 Colo. 581, 27 P. 2d 749 and *Hoover v. Jordan,* 27 Colo. App. 515, 150 Pac. 333 all recognize that, depending upon the circumstances, one has a privilege to communicate in good faith printed or written matter to another notwithstanding that it is defamatory where the publisher is promoting a legitimate individual, group or public interest. In the *Denver Public Warehouse Co.* case, quoting from *Newell on Slander and Libel,* the Court said:

" ' * * * A privileged communication is an exception to the rule that every defamatory publication implies *malice*. A qualified privilege is extended to a communication made in good faith upon any subject-matter in which the party communicating has an interest, or in reference to which he has a duty either legal, moral or social, if made to a person having a corresponding interest or duty, and the burden of proving the existence of malice is cast upon the person claiming to have been defamed. * * * The theory of privilege in connection with the law of defamation involves a variety of conditions of some nicety, and also a doctrine not always of easy application to a set of facts, and such being the

case in any trial, whether civil or criminal, while the questions of libel or no libel, malice or no malice are matters of fact for the jury, the question of privilege or no privilege is entirely one of law for the judge. That is to say, it is exclusively for the judge to determine whether the occasion on which the alleged defamatory statement was made was such as to render the communication a privileged one. The jury, however, will be the proper tribunal to determine the question of express malice where evidence of ill-will is forthcoming; but if, taken in connection with admitted facts, the words complained of are such as must have been used honestly and in good faith by the defendant, the judge may withdraw the cause from a jury and direct a verdict for the defendant.' "

It was there held that an officer of a corporation was in the exercise of a privilege when he wrote a letter to the manager of the company warehouse accusing an employee of thefts.

The *Melcher case,* supra, upheld the qualified privilege in connection with the writing of defamatory letters in response to character inquiries. Here the Court said:

" * * * Every one owes it as a duty to his fellowmen to state what he knows about a person, when inquiry is made; otherwise, whether or not men were honest could not be ascertained except by experience. But for such inquiries, it would often occur that parties about to enter into business relations with others would be unable to ascertain in advance their character with respect to integrity or capability. The interest of society demands and requires that inquiries may be made respecting such matters, and that answers thereto may be given without subjecting the party answering such inquiries to an action for libel or slander, for the opinion furnished in response to such inquiries; hence, where a party to whom an inquiry is addressed regarding another communicates *bona fide* without malice to the person making inquiry facts regarding the person inquired about, it is

a privileged communication; and so it follows that a party is justified in giving his opinion in good faith of the integrity and standing of a tradesman in answer to an inquiry concerning him. — Townsend on Slander and Libel, § 241-a; *Rude v. Nass,* 24 Am. St. Rep. 717, 79 Wis. 321; *Denver P. W. Co. v. Holloway,* 34 Colo. 432; *Harrison v. Bush,* 5 Ellis & Blackburn 344.

In the Bereman case a labor newspaper called plaintiff and others "labor spies" as a result of activity on the part of plaintiff seeking to persuade customers of a union laundry to patronize a non-union laundry. In holding that this was qualifiedly privileged, the Court, speaking through Mr. Justice Butler, said:

" * * * The publishers of the article and those to whom it was addressed had a common interest in the matters to which it related. The article, therefore, was qualifiedly privileged. *Melcher v. Beeler,* 48 Colo. 233, 110 Pac. 181; *Denver Public Warehouse Co. v. Holloway,* 34 Colo. 432, 83 Pac. 131.

"The law on this branch of the case is settled in this state. In *Melcher v. Beeler,* supra, we said at page 241: ' * * * a communication made *bona fide* upon any subject-matter in which the party communicating has an interest, or in reference to which he has a duty, is privileged, if made to a person having a corresponding interest or duty, although it contains incriminatory matter, which, without this privilege, would be slanderous and actionable; and this, though the duty be not a legal one, but only a moral or social duty of imperfect application [obligation].'

"2. The communication being qualifiedly privileged, no right of action arose unless the publishers were actuated by express malice, and the burden of proving express malice was on the plaintiff. The presumption is that the communication was made in good faith and without malice. *Melcher v. Beeler,* supra; *Denver Public Warehouse Co. v. Holloway,* supra; *Morley v. Post Printing & Publishing Co.,* 84 Colo. 41, 268 Pac. 540; *Walker*

*v. Hunter,* 86 Colo. 483, 283 Pac. 48; *Hoover v. Jordan,* 27 Colo. App. 515, 150 Pac. 333; *Hemmens v. Nelson,* 138 N. Y. 517, 34 N. E. 342. Assuming that the statements in the article were false, such falsity, of itself, is not sufficient to raise the inference that they were maliciously inspired. *Melcher v. Beeler,* supra. There was no evidence of express malice, nor was there evidence of facts from which express malice might be inferred. *Gattis v. Kilgo,* 128 N. C. 402, 38 S. E. 931."

■ The cases which are cited, and especially *Denver Public Warehouse Co.,* supra, recognized the principle that one who has a legitimate self interest may publish in an appropriate manner to a person in interest anything which reasonably appears necessary to the protection of his own reputation or other socially protected rights. *Prosser on Torts,* pp. 614, 615. This author adds:

" * * * He may make a reasonable effort to recover stolen property or to discover and prosecute the thief, to collect money due him or to prevent others from collecting it, to warn his servants against improper conduct or persons of questionable character, to consult an attorney for legal advice, to protest against the mismanagement of a concern in which he has an interest, or to protect his business against unethical competition. * * * "

The author cites cases on the stolen property question, and we call particular attention to *Bavington v. Robinson,* 124 Md. 85, 91 Atl. 777; *Faber v. Byrle,* 171 Kan. 38, 229 P. (2d) 718, and *Brow v. Hathaway,* an early Massachusetts case, 13 Allen 239. Two recent Utah cases also recognize this self interest privilege. *Hales v. Commercial Bank of Spanish Fork,* 114 Utah 186, 197 P. (2d) 910 (1948), and *Combes v. Montgomery Ward & Co.,* 119 Utah 407, 228 P. (2d) 272 (1951).

*Washington Annapolis Hotel Co. v. Riddle,* 171 Fed. (2d) 732, and the cases there cited appear to disapprove recognition of privilege in a theft situation but here the publisher was merely making an accusation to the alleged thief in the presence of third persons who could

not have been expected to render service in connection with the alleged theft.

The question remains whether or not Mrs. Bromley, the recipient of the information in the case at bar, had sufficient "corresponding interest" to warrant the publication of the statement to her. The test of the sufficiency of the recipient's interest is correctly set forth in the Restatement of the Law of Torts, Sec. 594, which provides:

"An occasion is conditionally privileged when the circumstances induce a correct or reasonable belief that

"(a) facts exist which affect a sufficiently important interest of the publisher and

"(b) the recipient's knowledge of the defamatory matter will be of service in the lawful protection of the interest."

Thus under the above rule, the question is solved by considering it from the standpoint of the publisher and how it appeared to him. In other words, do the circumstances induce a reasonable belief that the recipient's knowledge will be of service in the protection of the publisher's interest? This analysis of the problem is also approved by *Harper and James, The Law of Torts,* Vol. 1, Sec. 5.26, pp. 443, 444. The authors declare:

"Communications by the owner to protect or recover his property made to persons reasonably calculated to assist the owner in obtaining the return of the property or to prevent further losses are privileged."

Applying the standards outlined above to the present facts, we conclude that it was entirely natural and proper for Ling to go to Mrs. Bromley, the plaintiff's landlady, in his search for the plaintiff and for his (Ling's) automobile. Moreover, it was not illogical for Ling to believe that Whittemore had stolen his automobile. The stealthy manner employed by Whittemore to gain possession of the vehicle after he had been divested of title, together with the fact that he engaged in what appeared to be flight and appropriation of the automo-

bile for several days, could reasonably lead Ling to conclude that the acts of Whittemore constituted larceny. Furthermore, he could reasonably be expected to describe Whittemore's actions in those terms in order to obtain the assistance of Mrs. Bromley in his search for Whittemore and the car. In other words, Ling was not talking to a disinterested stranger, but to one who could be expected to know something on the subject and who, as his landlady, had an interest in the character and activities of her tenant and who could be expected to render assistance if she knew that Whittemore was acting contrary to law.

In view of the facts adduced at the trial as we have outlined them and the applicable rules of law, we conclude that the communication to Mrs. Bromley constitutes a qualified privilege. It follows that the trial court erred in refusing to so hold.

Whether Ling was shown to have abused the privilege, whether he was actuated by a good faith desire to recover his property or by a malicious desire to injure the reputation of Whittemore is a question for the jury to decide upon a consideration of all of the facts and circumstances. Once it was determined that the communication was qualifiedly privileged, the burden was on the plaintiff to establish that Ling acted maliciously. At the trial this issue was not presented to the jury. The court made reference to the subject of malice in its instructions but not in such a way as to inform the jury as to the context in which the issue was to be considered and its relationship to the concept of conditional privilege. For this reason the case must be remanded for a new trial.

The judgment is reversed and the cause remanded for a new trial or further proceedings in accordance with the views herein expressed.

MR. JUSTICE DAY not participating.